TOWN OF KNOX, Respondent, vs. FIDELITY & CASUALTY COMPANY OF NEW ·YORK, imp., Appellant.

*February 12—June 3, 1924.*

*Towns: Treasurer: Funds coming into treasurer's hands before surety bond executed: Embezzlement in subsequent term to replace shortage: Liability of surety: Right of surety to impeach official title of principal: Adverse examination: Friendly witness.*

1. A surety on the bond of a town treasurer is liable for the embezzlement of moneys subsequent to the execution of the bond, though such moneys came into the hands of the treasurer prior to the execution of the bond.  p. 106.
2. Where a deficiency for one term of a town treasurer has been covered up by money received during his second term, the surety on his bond for the second term is liable for that money.  p. 107.
3. Where the treasurer and members of the school board, to cover the shortage occurring during the first term, borrowed money from a bank upon a note signed by the members of the school board and purporting to be the note of the school district, and during his second term the treasurer made payments on the· note out of taxes collected, such payments constituted embezzlement during that term, and rendered the surety on his bond for that term liable; the school board having no authority to borrow money and give a note therefor in the absence of a lawfully called special school meeting, in view of secs. 40.11 and 60.49, Stats., and the treasurer having no right to pay out moneys of the town except in the manner provided by law.  p. 108.

4. Failure of the town treasurer to qualify for office within five days as required by sec. 60.20, Stats., does not affect the liability of a surety on his bond, since a surety will not be permitted to impeach the title of his principal. p. 109.

5. In an action by the town against the treasurer and the surety on his bond to recover the money embezzled, the court properly permitted the plaintiff to examine the town treasurer adversely under sec. 4068, Stats., notwithstanding he was friendly to the plaintiff and desired a recovery by it against the surety, his mental attitude being immaterial, since he was an adverse party on the record. p. 110.

APPEAL from a judgment of the circuit court for Price county: G. N. RISJORD, Circuit Judge. *Affirmed.*

This action was brought by the town of *Knox* against the defendant Sandquist, a former treasurer of the town, and the defendant and appellant, the *Fidelity & Casualty Company of New York,* to recover the amount of Sandquist's embezzlements during his term of office. It appears that Sandquist was appointed treasurer of the town during the spring of 1920, qualified as such, and served during the remainder of the term. At the annual town meeting in 1921 he was elected to the office of treasurer, qualified as such, and served during the ensuing year. The appellant, the *Fidelity & Casualty Company,* was surety on his bond for that year. His report as town treasurer, made at the end of the year, showed that he was short in his accounts in the sum of $8,283.75.

The case was tried before a jury, and it was found by a special verdict that the defendant Sandquist converted to his own use between April 21, 1921, and the end of his term in the spring of 1922 the sum of $8,283.75, and that the town chairman had knowledge prior to March 1, 1922, that said Sandquist had converted town treasury money to his own use. Judgment was rendered against the defendants for the amount so found by the jury to have been converted, from which judgment the defendant, the *Fidelity & Casualty Company of New York,* appealed.

For the appellant there was a brief by *Ralph E. Smith* of Merrill and *McGovern, Hannan, Devos & Reiss* of Milwaukee, and oral argument by *Francis E. McGovern.*

*W. K. Parkinson* of Phillips, for the respondent.

The following opinion was filed March 11, 1924:

OWEN, J.    The account stated showing receipts of the town treasurer during his term of 1921–1922 includes these items: April 1, 1921, balance on hand, $296.27; April 1, 1921, pool-room license, $20; refund state highway aid No. 20074, $800; April 15, 1921, additional appropriation state school money, $1,365.24.    The bond upon which liability is predicated was not executed until April 1, 1921, and it is contended that the surety should not be charged with moneys coming into his hands prior to the execution of the bond.

There is nothing in the record to raise a doubt of the receipt of said sums of money by the town treasurer between the time he made his report at the end of his first term and the time when the bond for his second term was executed. Neither is there anything to indicate that any portion of these moneys had been disbursed during such period.    If so, they were on hand, in the treasury, at the time the bond was executed, and the surety is liable for any subsequent misappropriation thereof.    The contention of the appellant, therefore, in this respect cannot be sustained.

While the report of the town treasurer at the end of his first term indicates in form a balance of $296.27, his testimony at the trial showed that at that time he was short in his accounts in the sum of $4,450.    He testified that he had not turned over to school district No. 2 this amount of money which he had collected in taxes for the use of that district.    He was school clerk of district No. 2.    Evidently with a purpose on his part to cover up this shortage, he and the other members of the school district board borrowed money from a bank upon a note signed by the members of the school board and purporting to be the note of the school

district. During his second term he paid up this note. He testified that he had paid thereon the sum of $1,926.80 out of his personal funds. An inference is, therefore, justifiable that he had paid the balance of the note out of the town treasury funds.

A contention is made on the part of the respondent that the evidence discloses that Sandquist paid the entire amount of the note out of his personal funds. With this, however, we cannot agree. We think the evidence is such as to warrant a finding of the jury that he paid on this note $1,926.80 and no more out of his own funds, and we think it plain that the remainder of the note was paid out of funds which he took from the town treasury.

It is the contention of the appellant that the moneys taken from the town treasury and paid on this note should not be charged to the defalcations of his second term because the actual defalcation occurred in the first and not the second term. This contention might be disposed of simply by a reference to the general rule that, where a deficiency for one term has been covered up by money received during the second term, the sureties on the bond for the second term are liable for that money. Throop, Pub. Off. § 219; Mechem, Pub. Off. § 287; *People v. Hammond,* 109 Cal. 384, 42 Pac. 36. However, we think the unsoundness of the contention is subject to demonstration. If the contention has any basis, it must be upon the assumption that the failure of the treasurer to pay to school district No. 2 the taxes which he had collected created an indebtedness from the town to the school district; that because of the defalcation the school district was obliged to and did borrow money in lieu of the taxes, and that payments of money from the town treasurer to apply in liquidation of the note of the school district were payments made on an indebtedness owing from the town to the school district, of which payments the town had the benefit in reducing the amount which it owed the school district. In the first place, this contention fails be-

cause the record does not disclose that the note on which the school district board borrowed the money was in fact that of the school district. The power of the school district board to borrow money at that time was referable to sec. 40.11, Stats. 1921. Under the provisions of that section the school district board had no power to borrow money on behalf of the school district and to execute a note binding on the school district, unless authorized so to do at an annual or lawfully called special school meeting. We discover nothing in the record to indicate that the school board was authorized to borrow money upon the credit of the school district. In the second place, it is by no means certain that an indebtedness was created from the town to the school district by reason of the default of the town treasurer in the respect mentioned. While we do not find that it has ever been decided, and while we do not assume here to decide it, it seems quite probable that the proper remedy of the school district in such a situation is to sue the treasurer and his sureties upon his bond. In the next place, the propriety of the disbursements made in this behalf by the treasurer during his second term must be tested just as though some other person had been elected treasurer for that term and similar disbursements had been made by such treasurer. *Detroit v. Weber,* 29 Mich. 24. A town treasurer is prohibited from paying out moneys coming into his hands except in the manner provided by law. He is to receive and take charge of all moneys belonging to the town or which are required by law to be paid into the treasury, and to pay the money of the town only upon the lawful order of such town or of its officers, duly made pursuant to law. Sec. 60.49. We will assume that John Doe had been elected to the office of town treasurer for the 1921–1922 term; we will assume, also, that he took money belonging to the town treasury without any order therefor drawn by the proper town officers, and made payments upon this so-called school district note. Can it be thought for a moment that such

conduct would not be a conversion of the town funds? If such conduct would be held conversion on the part of John Doe, town treasurer, then it must also be held to be conversion on the part of Carl Sandquist, town treasurer, and there is no escape from the conclusion that moneys taken by Sandquist out of the town treasury for the purpose of payment on this so-called school-district note constituted an embezzlement of the funds and that the appellant is liable therefor upon its bond.

Sec. 60.20 provides that "Within five days after the election of any town officer the town clerk shall transmit a notice thereof to the person elected, unless he voted at the meeting; and every person elected or appointed to any town office, except justices of the peace, shall, within ten days after his election or appointment, or notification thereof, if required, take and file the official oath. The neglect to file such oath, or an official bond when required, within the time prescribed therefor shall be deemed a refusal to serve in such office." Sandquist was elected for a second term April 5th. He did not qualify until April 21st. It is suggested, though not strenuously urged, that because he did not qualify within the time required by law, the surety company is not liable upon the bond. It is well settled that the surety on an official bond will not be permitted to impeach the title of the principal. *People v. Hammond,* 109 Cal. 384, 42 Pac. 36; 29 Cyc. 1452, and cases there cited. All concerned seem to have treated the qualifications of the town treasurer as timely, and the appellant will not be permitted to challenge his title to the office.

Appellant also complains because the respondent town was permitted to examine the town treasurer adversely under the provisions of sec. 4068. Although the town treasurer was then under arrest charged with the crime of embezzling the funds of the town, he nevertheless waived his constitutional privilege and freely testified to his defalcations. He admitted that he did not want to see the town

lose the money, and that he would rather see the surety company pay it than to have the town lose it. Appellant argues that he was not an adverse but a friendly witness on behalf of the town and that it was error for the court to permit the town to examine him adversely under the statute. There is no question but that he was an adverse party upon the record. Whether he is an adverse party does not depend upon his mental attitude, his prejudice or his sympathy. Sec. 4068 plainly provides that any person who is a party of record in any civil action or proceeding, or any person for whose immediate benefit any such action or proceeding is prosecuted or defended, may be examined upon the trial of any such action or proceeding as if under cross-examination, at the instance of adverse party or parties or any of them. There was, therefore, no error in permitting the adverse examination.

We discover no error in the record, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 3, 1924.