PRUNO and others, Appellants, vs. INDUSTRIAL COMMISSION
OF WISCONSIN and another, Respondents.

*March 14—June 22, 1925.*

*Workmen's compensation: Findings of industrial commission:
When vacated: When relation of master and servant exists:
Farmer requested to blast rock in well: New trials in com-
pensation cases: Function of commission.*

1. An order of the industrial commission can be set aside only
where it acted without or in excess of its powers, or when
the award was procured by fraud, or when the findings of
fact by the commission do not support the order or award;
but when findings are sustained by competent credible evidence
the commission cannot be said to have acted in excess of or
beyond its powers. p. 361.
2. Where a farmer was requested to set a blast of dynamite under
a rock in a well, it was not part of his duty to remove the
rock after setting the blast, and, if the relation of employer
and employee existed as between him and the one assisting
him in placing the blast, such relation ceased after the blast
was exploded, and the farmer was not liable as an employer
for the death of the assistant, who was killed while ascertain-
ing the effect of the blast and attempting to remove the rock.
p. 361.

*On rehearing.*

3. The industrial commission is a *quasi*-judicial body, and is sup-
posed to stand as an impartial tribunal, no partisan activity on
its part toward a claimant being required. Its duty is to
make investigations, find the facts according to the weight
of the evidence, and apply the law fairly and justly. p. 363.
4. This court, when the judgment of the lower court is affirmed,
cannot, in the absence of proper ground, modify its mandate
to permit the commission to take further testimony and make
a new award if the evidence warrants it (in effect, grant a
new trial). p. 363.

APPEALS from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Reversed, with
directions.*

Workmen's compensation. Separate actions were com-
menced in the circuit court for Dane county to review the
decision of the *Industrial Commission.* These actions were
tried together in the circuit court, and from an adverse judg-
ment *Arthur Pruno* and the *Wisconsin Brotherhood of*

*Threshermen Insurance Company, Limited Mutual,* appeal
to this court.   But one printed case was served and the ap-
peals will be treated in this court as if consolidated.

*Arthur Pruno* is a farmer residing in Osceola, Polk
county, Wisconsin.   In the fall of the year he did some
threshing, owned a well-drilling machine, and did a little
well drilling.   He also owned a battery, some wire and dyna-
mite, and had used the dynamite for blasting stumps on his
farm.   Lars Olson is a well digger.   In his operations he
was assisted by Herbert Westine, his son-in-law, and Alvin
Olson, his son.   Lars Olson took a contract to dig a well for
George Le Huquet on his farm near Osceola.   They were
paid at the rate of $12 per day,—Westine received $5 a day,
Olson and his son the remainder.   At a depth of 105 feet
they encountered a large rock which prevented their further
progress.   Olson then advised Le Huquet that he would have
to get some one to blast the rock at the foot of the well be-
fore it could be completed.   Le Huquet retained a little over
$100 of the amount due Olson until the well should be com-
pleted.   Olson left his windlass and other equipment at the
well until Le Huquet should get some one to blast the rock.
Le Huquet procured two men to come and set a blast for
the purpose of breaking up the rock.   Each of them was
unsuccessful.   He then called up *Pruno* and asked him if he
had wires and stuff with which to dynamite a well, and
Le Huquet told *Pruno* that he had a rock in the well, that he
would like to have it blasted, and requested *Pruno* to come
and do the work.   On December 4, 1922, *Pruno* took a com-
mon dry-cell battery, some wire and some dynamite, and
was driven by his brother Clarence to the Le Huquet farm.
*Pruno* supposed that Olson or some one would be there to
go down in the well and place the charge of dynamite, but
when he arrived at the Le Huquet farm Olson and his crew
were at another place. *Pruno* and his brother drove to where
Lars Olson, Westine, and Alvin Olson were at work.   What
occurred there is in dispute, but in view of the finding of the
*Commission* we assume that *Pruno* requested Westine to go
to the Le Huquet farm for the purpose of placing the blast

in the bottom of the well. It is undisputed that Olson told Westine he could go if he liked and that Westine did go. Upon their arrival at the Le Huquet farm Westine was let down into the well, cleaned out the hole, placed a charge of dynamite, was drawn up, water was poured into the well to make the charge air tight, it was then exploded. Westine was again let down into the well and worked there for about half an hour, some of the material being removed from the bottom of the well. At that point the parties were called to dinner, and after dinner *Pruno* announced that his wife was ill and he must return home. The evidence as shown by the record is that *Pruno* then said he would like to know what was in the bottom of the well. *Pruno* claims that this is an error, and what he in fact said was that Westine wanted to know. It appears, however, without dispute, that *Pruno* had completed all that he had come to the Le Huquet farm to do. After some consultation *Pruno* consented to assist in letting Westine to the bottom of the well. After a few moments no signals were received from him. The party became alarmed and the car was driven to Dresser Junction. There Alvin Olson was found. They returned to the well. Alvin Olson was let into the well, and shortly after he reached the bottom no signs of life were made by him. Subsequently both men were removed from the well dead.

Mrs. Westine made claim for compensation under the workmen's compensation act against *Pruno* and his brother. The *Industrial Commission* awarded compensation. This action was begun to review that award. Upon a trial in the circuit court the award as to Clarence Pruno was set aside. The award as to *Arthur Pruno,* the plaintiff here, was confirmed, and from the judgment of confirmation both *Arthur Pruno* and the *Insurance Company* appeal.

*W. T. Doar* of New Richmond, for the appellant *Pruno.*

For the appellant *Wisconsin Brotherhood of Threshermen Insurance Company* there was a brief by *Duffy & McGalloway* of Fond du Lac, and oral argument by *F. Ryan Duffy.*

For the respondent *Industrial Commission* there was a brief by the *Attorney General, Mortimer Levitan,* assistant

attorney general, and *Emmert L. Wingert* of Madison, and oral argument by *Mr. Wingert.*

The following opinion was filed April 7, 1925:

ROSENBERRY, J.   The order of the *Industrial Commission* can be set aside only upon one of the following grounds: (a) that the *Commission* acted without or in excess of its powers; (b) that the order or award was procured by fraud; (c) that the findings of fact by the *Commission* do not support the order or award.   It has been repeatedly held that when there is competent credible evidence sufficient to sustain the findings of the *Commission* it cannot be said to act in excess of or beyond its powers.   Here, however, it is considered that the undisputed testimony shows that *Pruno* was employed to do but one thing—to explode a blast of dynamite in the bottom of the well.   It was all that he was requested to do and all that he attempted to do.   He had nothing to do with the removal of the rock from the bottom of the well nor was he concerned, except in a neighborly way, with the result of the blast which he had placed in the well. It was no part of his duty to remove the rock.   The entire argument in this case in support of the award rests upon the proposition that *Pruno* undertook to blast "out" the rock. This is construed to mean that he undertook to remove the rock as an obstruction to the further progress of Olson's work.   This is a wholly unwarranted inference and one which to any one with the slightest degree of familiarity with the way in which this work is carried on, under the circumstances as shown by the evidence in this case, is beyond the field of reasonable inference.   He was repeating the operation which had been theretofore performed by two other men, to wit, the placing of a blast in the bottom of the well for the purpose of breaking up the rock.   If it be conceded that Westine was the employee of *Pruno* in placing the blast—a thing which in itself is very doubtful,—it conclusively appears that when that operation was completed he was thereafter performing no service for *Pruno,* and therefore at the time of the unfortunate accident the relation of

employer and employee did not exist between *Pruno* and *Westine* if it in fact had ever existed. Whatever was done in the way of removing material from the bottom of the well in no way benefited *Pruno.* If it be assumed that they all, including *Pruno,* wished to ascertain the effect of the blast, that did not create the relation of employer and employee.. Assisting Westine to go into the well after dinner was a neighborly act, performed to satisfy a very natural curiosity on the part of all concerned, Westine included. It in no way concerned *Pruno* as an employer.

This case has no parallel in the decisions of this court as to its facts, but in principle is the same as *Lange Canning Co. v. Industrial Comm.* 183 Wis. 583, 197 N. W. 722. In view of the conclusion at which we have arrived upon this branch of the case, it is not necessary for us to consider other questions raised in the case.

*By the Court.*—Judgment appealed from is reversed, and cause remanded to the circuit court with directions to enter judgment setting aside the award of the *Industrial Commission;* no costs to be taxed by either party, appellant to pay the clerk's fees.

The following opinion was filed June 22, 1925:

ROSENBERRY, J. (*on rehearing*). The motion for rehearing in this case was made at the instance of the *Industrial Commission,* accompanied by the request that the court make such modification of the mandate or decision as may be necessary to permit the *Commission* to take further testimony and make another award if new evidence warrants it. The brief of counsel contains the following statement:

"We wish it to be clear that neither the *Industrial Commission* nor the attorney general questions the correctness of this court's decision, that the original award should be set aside. Conceding that determination to be sound on the record before the court, it is felt that justice will be best served by a further excursion into the facts of the situation."

It appears from the record that there have already been two hearings in this case before the *Industrial Commission* and there is every indication that the evidence has been produced in the minutest detail. Nor is there any statement in the briefs filed upon this motion to indicate that there are in existence facts other than those presented in the record. The situation thus presented is anomalous to say the least and one to which we deem it our duty to call attention. We are in effect asked to grant a new trial without any showing or even a suggestion that there exists any proper ground therefor, in order that the *Commission* may make a further "excursion" into the facts of the situation. Under the law it is the duty of the *Commission* to have made "this excursion," and, as already stated, the record indicates that it has been done thoroughly and exhaustively. The *Industrial Commission* is a *quasi*-judicial body and is supposed to stand as an impartial tribunal in the administration of the law. While no doubt it is the intent and purpose of the law that the *Industrial Commission* shall see that the claimant is protected in her rights, it does not require partisan activity on the part of the *Commission*. Every person, claimant, employer, and insurance carrier, stands equal before the *Commission,* and it is the duty of the *Commission* to make investigations, find the facts according to the weight of the evidence, and apply the law fairly and justly without regard to the consequences to particular parties.

In any event this court cannot, when the judgment of the lower court is affirmed, grant a new trial as a matter of favor either to the *Commission* or parties to controversies before it.

*By the Court.*—Motion denied, without costs.