Town of Pella, Appellant, vs. Gresch and others, Respondents.
Same, Respondent, vs. Same, Appellants.

*May 12—June 22, 1925.*

*Towns: Defalcation by treasurer: Repayment or replacement during subsequent term: Liability of respective sureties: Burden of proof: Evidence: Sufficiency.*

1. Where a town treasurer had converted public funds and had on hand at the time of his re-election a less amount than the sum with which he was charged, the taking, in payment of taxes, of road orders which were properly payable out of road funds does not bring the defalcation within the second term or amount to a satisfaction of the shortage in the first term, so as to relieve the bondsmen for such term from liability. p. 416.
2. Where a defalcation is established to have occurred during a particular term, the burden is on the officer's surety for that term to show payment or replacement during a subsequent term; and in this case it is *held* the burden has not been met. p. 416.

Appeal from a judgment of the circuit court for Shawano county: Edgar V. Werner, Circuit Judge.   *Reversed, with directions.*

This was an action brought by the plaintiff town to recover moneys converted by *William Gresch,* town treasurer. The findings of fact briefly and clearly state the facts as follows:

"1. That the defendant *Wm. Gresch* was the duly elected and qualified town treasurer of the town of *Pella,* having been elected to succeed himself for several successive terms, and that the defendants *Herbert Ewert* and *Charles Zahn* became sureties upon his official bond, following his election at the annual town meeting on the first Tuesday of April, A. D. 1921.

"2. That at the next annual election held the first Tuesday of April, A. D. 1922, the said *Wm. Gresch* was again elected town treasurer, succeeding himself, and following which election the defendants *Herman Grimm, Carl Reinke,* and *Frank Rades* became sureties upon his official bond.

"3. That at the annual settlement of March 28, 1921, between the town and the defendant *Wm. Gresch,* there was a balance due from the defendant *Wm. Gresch* to the town of $1,038.65, and that at the annual settlement between the town and the defendant *Wm. Gresch,* had on the 28th day of March, A. D. 1922, there was a balance due of $6,138.75 from the defendant *Wm. Gresch* to the town, and that at the annual settlement between the town and the defendant *Wm. Gresch,* had on the 27th day of March, A. D. 1923, there was a balance due of $11,542.32.

"4. That the defendant *Wm. Gresch* signed such annual settlement, and upon a rechecking of the same it was found that the same was correct.

"5. I further find that the said *Wm. Gresch* paid town orders, lawfully drawn on said town treasury, in sums sufficient to exhaust $1,038.65, with which he was charged at the settlement of March 28, 1921, and also paid town orders sufficient to exhaust all funds which lawfully came into his hands as such town treasurer, so that there was no defalcation of the fund with which he was charged at the annual settlement of 1921.

"6. I further find that the defendant *Wm. Gresch* had on hand the sum of $6,138.75 with which he was charged in the settlement of March 28, 1922.

"7. I further find that there were issued town orders against the town treasury and paid by the defendant *Wm. Gresch* sufficient to exhaust the fund with which he was charged, together with any other funds received by him during the time that the defendants *Herman Ewert* and *Charles Zahn* were sureties upon his bond.

"8. I further find that if any credence is to be given to the testimony of *Wm. Gresch* that he did not have the funds on hand with which he was charged at the annual settlement of March 28, 1922, and the undisputed record evidence is given full weight, that he then replaced or restored the said fund, it was impossible to pay the said orders so issued without replacing or restoring said fund from some source, either out of his private funds or by unlawfully converting funds which came into his possession during his last term as town treasurer.

"9. I further find that at the annual election held the first Tuesday of April, A. D. 1923, that the defendant *Wm. Gresch* was defeated as town treasurer, and one N. J. Brunner elected as his successor, and that the said *Wm. Gresch* turned over to his successor $5,299.24, leaving a balance due from the said *Wm. Gresch* to the plaintiff of the sum of $6,152.72, which upon demand he has refused to pay to his successor.

"10. I further find that in the annual settlements made between the plaintiff and the defendant *Wm. Gresch* that the said defendant *Wm. Gresch* participated therein, and was familiar with the settlements so made and acquiesced therein and acknowledged the correctness thereof, and that after the election of his successor he knowingly and with knowledge of the facts acknowledged the correctness thereof, and agreed to turn such balance over to his successor, but has refused so to do.

"11. I further find that the defalcation of the said sum of $6,152.72 occurred during the last term of the defendant *Wm. Gresch's* treasurership and during the time that the defendants *Herman Grimm, Carl Reinke,* and *Frank Rades* were upon his official bond."

Upon the facts found by the court, judgment was rendered against *Herman Grimm, Carl Reinke,* and *Frank Rades* for

the sum of $6,152.72 with interest, from which judgment said defendants appeal.

For the plaintiff town there was a brief by *Winter & Winter* of Shawano, and oral argument by *P. J. Winter.*

For the defendants *Grimm, Reinke,* and *Rades* there were briefs by *Dillett & Fischer* of Shawano, and oral argument by *C. F. Dillett.*

For the defendants *Ewert* and *Zahn* there was a brief by *Eberlein & Larson* of Shawano.

ROSENBERRY, J.   The controversy in this case is between the bondsmen for the years 1921–1922 and the bondsmen for the years 1922–1923.   By the settlement of March 28, 1922, *Gresch* was charged with $6,138.75.   If he had that sum on hand on that date or at any time during the subsequent term made it up, the judgment in this case is right. If, however, he did not have the amount with which he was charged on hand or did not subsequently make it up, the bondsmen for the term 1921–1922 are liable for such sum as was not on hand and was not subsequently made up, for the conversion occurred during the first term, as we shall call it for convenience.   It appears quite conclusively that on the 4th day of April, 1922, seven days after the making of the settlement referred to, *Gresch* had on hand in four banks the sum of $3,047.92.   There is no doubt that the law will presume that a public officer has on hand the amount of moneys with which he is justly chargeable.   To indulge in any other presumption would be to indulge in a presumption of wrongdoing on the part of a public official.   This presumption, however, is not conclusive and must yield in every case to established facts.   *Gresch* had been town treasurer prior to the two terms in question.   At the settlement in 1921 he had been short in his accounts, but it appears conclusively that the amount was made up during the term of 1921–1922.   He had claimed consistently that he had been

overcharged in prior settlements. The trial court was apparently in doubt, for by the eighth finding he finds that if the defendant *Gresch* "did not have the funds on hand with which he was charged at the annual settlement of March 28, 1922, . . . that he then replaced or restored the said fund." While we have the same difficulty with the testimony of the defendant *Gresch* that the trial court had, and it must be conceded that it is in many respects contradictory and unreliable, it is our opinion that upon the whole case the clear preponderance of the testimony shows that *Gresch* had on hand at the beginning of the 1922–1923 term no more than $3,047.92 on deposit in the banks and $180 cash. If, however, during the second term the amount was made up, even though made up out of moneys received by him as treasurer during the second term, the bondsmen for the term 1922–1923 are liable. *Knox v. Fidelity & Cas. Co.* 184 Wis. 104, 197 N. W. 733.

The orders issued on and subsequent to April 1, 1922, and up to and including December 3, 1922, amounted to $2,482.95. It is evident, therefore, that there was on hand sufficient funds on April 4, 1922, to pay all of said orders and leave a balance in the town treasury of $564.97. In the meantime the treasurer had received on account of collections due the town $4,342.30, so that on December 3, 1922, the treasurer, without having put any of his individual money into the town funds, would have on hand the sum of $4,907.37 of town funds. On December 4 and 5, 1922, the town board issued orders amounting to $7,573.81. These orders were all for road work and were drawn in the form prescribed by statute, to be paid out of the road fund in accordance with the provisions of sec. 60.35. It is the contention of the appealing defendants that these orders were not paid; that about one third of them was paid and that the remainder was used in payment of taxes, and the evidence in the case strongly corroborates this claim. The clerk testified:

"The orders were not in fact given to those various people entitled to them until tax-paying time."

"For their convenience, I went over to the village about the first of January, I think, to make it convenient for the people and they would come and get them around the first of January."

It is the contention of the bondsmen for the first term, however, that if *Gresch* did not pay these road orders out of the road fund as he was required by law to do, but took them in payment for taxes, he used a fund which he had no right to use to make good the default in not having the money in the road fund, thus clearly bringing a defalcation within the last term. Citing *Milwaukee Co. v. Pabst*, 45 Wis. 311.

The difficulty with this argument is, that while *Gresch* may have been guilty of an irregularity he did not in fact make up the shortage which existed on April 4, 1922, at the beginning of his last term of office. If, as we hold, the fact of defalcation was established in the prior term, the burden is then clearly upon the bondsmen for the first term to establish by satisfactory evidence that the amount for which they were liable has been paid by *Gresch* out of his own funds or discharged during the last term in some other way. The fact that he did not segregate the funds belonging in the several accounts did not amount to a conversion, nor did it increase or diminish the amount of funds in his hands. None of the funds in this case were in any way earmarked. *Gresch* kept the funds of the town in the bank intermingled with his own. There is nothing but a bare presumption that the funds which were on deposit in the banks on March 28, 1922, were in fact the funds of the town rather than *Gresch's* personal funds. It appears that some checks were issued against the funds in the banks and unpaid on April 4, 1922. Nevertheless the money was on hand. If checks on account of orders issued during the first term were paid out of it, it leaves the accounting just the same as between the bondsmen. It appears from the evidence that on election day, 1922, *Gresch* had on hand $160 in cash with which he paid town orders. It further appears that on that day he borrowed an additional $20, making a total of $180, with which

he cashed town orders on election day. The amount deposited in bank plus the amount he had on hand in cash and borrowed was the sum of $3,227.92. He was on that day chargeable in the sum of $6,138.75. It appears, therefore, that he converted during the first term the sum of $2,910.83 which was not restored and for which amount the bondsmen for the first term would be liable. In determining that question the trial court clearly applied a wrong rule of law. If it be established that the defalcation in the first term is proven, then the burden is upon the bondsmen for the first term to show payment or replacement. That burden the bondsmen for the first term have not met.

*By the Court.*—Judgment is reversed, and cause remanded with directions to the court to enter judgment in favor of the plaintiff and against the appealing defendants for the sum of $3,227.92 and against the defendants *Ewert* and *Zahn* for $2,910.83.