GOMBER, Administrator, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*May 2—September 10, 1935.*

For the appellant there was a brief by *L. M. Nelson* of Marinette, attorney, and *Grady, Farnsworth & Walker* of Portage of counsel, and oral argument by *Dorothy Walker* and *Daniel H. Grady.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Goodman Medical Society there was a brief by *Bendinger & Hayes,* attorneys, and *John A. Kluwin* of counsel, all of Milwaukee, and oral argument by *Gerald P. Hayes.*

The following opinion was filed June 4, 1935:

NELSON, J. An examiner for the Industrial Commission, after due hearing, denied Jacob Gomber's application for compensation because of his conclusion that Gomber was not an employee of the defendant, Goodman Medical Association, at the time he was injured, but was an independent contractor.

Whether Gomber's status was that of an employee or that of an independent contractor at the time he was injured was the sole question decided by the examiner, the commission, and the circuit court. The facts are undisputed, so the only question before us relates to the commission's conclusion of law as to the status of Gomber at the time he was injured.

While we may not disturb the commission's findings of fact, if there be competent credible evidence to support them, we are not so bound by its conclusions of law, but may review the facts to ascertain whether the commission exceeded its authority in making its conclusion of law. *Pruno v. Industrial Comm.* 187 Wis. 358, 203 N. W. 330, 204 N. W. 576; *Michigan Quartz Silica Co. v. Industrial Comm.* 214 Wis. 289, 252 N. W. 682; *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194; *Seaman Body Corp. v. Industrial Comm.* 204 Wis. 157, 235 N. W. 433; *Western W. & I. Bureau v. Industrial Comm.* 212 Wis. 641, 250 N. W. 834; *Olson Rug Co. v. Industrial Comm.* 215 Wis. 344, 254 N. W. 519.

For many years prior to August 2, 1932, Jacob Gomber was a physician and surgeon, practicing his profession at Goodman, Wisconsin. The defendant, Goodman Medical Association, is an unincorporated voluntary association, com-

posed largely of the employees of the Goodman Lumber Company, whose plant is located at Goodman. Its members numbered three hundred and fifty to four hundred. Members with families paid the association $1.25 per month, while single men paid only seventy-five cents. The primary purpose of the association was to furnish medical and hospital services to its members, and to that end to have in its employ a competent doctor. Dr. Gomber was so employed, and entered into a written contract with the association on or about April 1, 1924. From that time until his death he continued without material interruption to perform his contract with the association. The association maintained a hospital which Dr. Gomber superintended.

The provisions of the contract may be summarized as follows: The association agreed to pay Dr. Gomber a salary of $250 per month, furnish him with living quarters in the hospital, supply electric light and fuel, and contribute not to exceed $46 per month for janitor services. He was permitted to take a vacation of from ten days to two weeks each year without deduction of salary, provided it should not be taken during the busy season, or during a time of epidemic, and should be taken with the full consent of the members of the medical board. He was allowed compensation at the rate of $1 per day for the board of patients while in the hospital. He agreed among other things: To perform such services as a physician and surgeon as were required to be furnished by the Goodman Lumber Company and the Cliffs Chemical Company under the workmen's compensation laws, to make out accident reports, to make X-ray examinations, and otherwise to ascertain as far as he was able the nature and extent of injuries and disabilities sustained by the employees of said companies, to make all reports, and to testify in any case arising out of industrial accidents, to act as physician and surgeon in all cases, either accident or sickness, involving employees of said companies, and not requiring

the assistance of out of town physicians, and to treat all families residing in Goodman or within a radius of one mile, who should regularly pay to the association the established monthly fee. He was permitted to treat certain patients, as a private practitioner, and to charge a specified fee in confinement cases, to engage in private practice out of town, provided such practice did not interfere with his duties to the members of the association. He was not permitted while the mills were running to be so far away from town that he could not hear the emergency whistle when blown, and was required, before leaving town, after business hours, to notify some member of the medical board as to where he might be reached by phone or messenger. He was also required to have the hospital in readiness at all times to receive any patient who was a member of the association, and was bound to furnish free service and board except as otherwise specified. He was permitted to admit private patients to the hospital at $2.50 per day,—$1 of which was to be retained by him, and $1.50 to be accounted for to the medical board each month. It was the understanding that at no time should any private patient interfere with the admission to the hospital of any member of the association. He was required to hold definite office hours each weekday and each Sunday. He was further required to make all reports requested by the board, keep certain records of account, furnish a monthly report, and account for all moneys to the medical board. He was required to turn into the secretary of the board at least once every week all cash and charge sales of medicines. He was further required to furnish, at least twice a year, a complete inventory of all medicines, supplies, etc., on hand. The purchase, use, and sale of all medicines and supplies were to be in accordance with instructions from time to time given by the medical board. The contract was subject to termination by either party on one month's notice in writing, or, in lieu thereof, the payment of one month's salary.

It appears from the testimony that the medical board consisted of three persons; that the association had no bank account, but the membership dues were collected by the Goodman Lumber Company, which accounted for them; that the company furnished the association with a monthly statement of the dues collected, and that the medical board authorized the company to pay all bills of the association, including salaries. The Cliffs Chemical Company, another local company, paid the association $20 a month to care for its compensation cases. The Goodman Lumber Company paid the association $2.50 per day for each person confined in the hospital and $1 per day for ordinary treatment. The association received all fees charged these companies by Dr. Gomber.

Under the terms of the contract, Dr. Gomber was required to testify at all industrial accident hearings. On August 2, 1932, he was requested by the Goodman Lumber Company and the association to go to Rhinelander to testify at an Industrial Commission hearing. Shortly after entering his automobile he accidentally closed the door thereof in such a way as to catch and injure the index and second fingers of his right hand. He was in a hurry to get to the hearing, so after wrapping his handkerchief around the injured fingers, he drove to Rhinelander. The fingers became infected, necessitating first an amputation of the middle finger and later on the amputation of his arm. At the time of the hearing before the examiner his arm had not been amputated. He died on January 23, 1935.

It is obvious that the examiner, the commission, and the circuit court regarded the contract as one requiring Dr. Gomber to render only professional services. Hence their conclusion that he was not an employee. It has been held generally that the relation between a hospital and a physician employed by it is not that of master and servant; that a hospital does not undertake to act through its physician, but only to pro-

cure him to act upon his own responsibility; that physicians and surgeons employed by hospitals to minister to the sick and the infirm continue to be professional men who still practice their professions to the best of their abilities and according to their best judgment and discretion, and that while so practicing they are in no proper sense of the word subject to the orders or control of their hospital employers, or bound in treating the sick to follow their directions. *Schloendorff v. Society of New York Hospital,* 211 N. Y. 125, 105 N. E. 92; *Glavin v. Rhode Island Hospital,* 12 R. I. 411; *Hillyer v. St. Bartholomew's Hosp.* L. R. [2 K. B. 1909] 820; *Hall v. Lees,* L. R. [2 K. B. 1904] 602; *Evans v. Liverpool Corporation,* L. R. [1 K. B. 1906] 160; *Kellogg v. Church Charity Foundation,* 128 App. Div. 214, 216, 112 N. Y. Supp. 566; *Hearns v. Waterbury Hospital,* 66 Conn. 98, 33 Atl. 595; *Laubheim v. De K. N. S. Co.* 107 N. Y. 228, 13 N. E. 781.

In 19 A. L. R. 1183, the writer of the note states the rationale of the conclusion that physicians are not the servants of the hospitals employing them:

"The decisions of which the rationale is that physicians and surgeons are not the servants of their employers are referable to the conception that they are 'professional men' who are engaged on the understanding that they are to 'exercise their profession to the best of their abilities according to their own discretion; but in exercising it they are in no way under his [their] orders or bound to obey his [their] directions.' This theory as to the nature of their position necessarily implies that they are independent contractors—a designation which has sometimes been specifically applied to them."

The cases cited involved controversies between patients and hospitals and the asserted liability of the latter for the acts of the physicians and surgeons furnished by them. None of them dealt with an asserted right of a physician or

surgeon to recover compensation from the hospital which employed him. So far as we have been able to discover there is no case which has passed upon that particular question with the possible exception of *Bernstein v. Beth Israel Hospital,* 236 N. Y. 268, 140 N. E. 694. That case involved a claim of an interne who was under contract with the hospital to serve two years without pay other than board, lodging, and hospital uniforms. It was held that he was an employee and entitled to compensation. CARDOZO, J., after describing the duties of an interne, and in speaking for the court, said:

"The claimant, while so engaged, was the employee of the hospital under whose orders he was acting. . . . Liability in this case is to be determined by the contract, express or implied, between hospital and physician. We think the relation *inter se* is to be characterized as a relation of employment. A distinction is to be drawn for that purpose between the position of a visiting or consulting physician, and that of an interne, who has placed his time and service at the call of a superior. We have drawn a like distinction between attorneys at law retained for a specific service, and those serving a single employer in consideration of a salary (*Greenberg v. Remick & Co.* 230 N. Y. 70, 75, 129 N. E. 211). This claimant was under a duty to spend his days and nights at the hospital, and to render any service, administrative or medical, exacted by the hospital through its administrative agents, within the range prescribed by propriety and custom. He was a servant or employee by every test of permanence of duty, of intimacy of contact, and of fullness of subjection."

That case obviously did not deal with a physician or surgeon who was under contract with a hospital to render strictly professional services. Whether a physician or surgeon who is under contract with a hospital and required to give all of his time to it may be regarded as an employee within the meaning of the Workmen's Compensation Act we are not presently called upon to decide.

The facts of the present case undisputably show that Dr. Gomber was employed by the association to perform many duties which were not professional in character. He served as superintendent of the hospital. While so acting his status was that of a servant. *Schloendorff v. Society of New York Hospital, supra.* He also managed the hospital pharmacy, and in that capacity bought and sold drugs for the association. He was required to attend hearings of the Industrial Commission in which employees of either the Goodman Lumber Company or the Cliffs Chemical Company were interested. His fees charged for such attendance were paid to and belonged to the association. His attendance upon such hearings was clearly under the control of the association. The association had the authority to direct him where and when to go.

Even assuming for the time being that Dr. Gomber was an independent contractor while performing strictly professional services, he was bound to perform many other services which were nonprofessional in character. The commission and the circuit court apparently overlooked this.

Sec. 102.07 in part provides:

"*Employee defined.* 'Employee' as used in this chapter means: . . . (4) Every person in the service of another under any contract of hire, express or implied. . . ."

This language, in our opinion, is sufficiently broad to bring the facts of this case within it and to impel the conclusion that Dr. Gomber's status at the time he was injured was that of an employee, and he was in his lifetime, and his estate now is, entitled to compensation.

It appears that the association carried compensation insurance, but there is no proof in the record that the premiums charged by the insurance company were in part based upon the wages paid Dr. Gomber. We cannot now say that the insurance company is estopped to claim that he was not an employee.

*By the Court.*—Judgment of the circuit court is reversed, with directions to reverse the order of the Industrial Commission and to return the record to the Industrial Commission for further proceedings.

A motion for a rehearing was denied, with $25 costs, on September 10, 1935.