ZIMMERMANN v. SCANDRETT et al.

No. 1402.

District Court, E. D. Wisconsin.

Nov. 30, 1944.

Jerome F. Treis, of Milwaukee, Wis.
(Walter D. Corrigan and John S. Barry,
both of Milwaukee, Wis., of counsel), for
plaintiff.

Rodger M. Trump, of Milwaukee, Wis.,
(Werner J. Trimborn, of Milwaukee, Wis.,
of counsel), for defendant.

DUFFY, District Judge.

This is an action brought under the Federal Employers' Liability Act, as amended, 45 U.S.C.A. § 51 et seq. Defendants move for summary judgment (Rule 56 of the Federal Rules of Civil Procedure, 28 U. S.C.A. following section 723c) on two grounds: (a) That the plaintiff is not entitled to sue under the act since the deceased as an employee of the defendants was not engaged in interstate commerce; and (b) that the subject matter of deceased's fatal injury having been submitted to the Industrial Commission of Wisconsin by stipulation of the deceased's widow and the defendants, the award of the commission thereon was res judicata and a bar to plaintiff maintaining this action.

The defendants are operating as a common carrier the railroad company's system which extends from Chicago and Milwaukee westward through various States to the Pacific Coast. The Milwaukee Shops, located in Milwaukee County, are an instrumentality or part of the system and consist of a group of twenty buildings. One of these buildings, known as Roundhouse No. 1, was used for the housing and repairing of locomotives utilized in interstate as well as intrastate commerce.

Since July 14, 1920, and until his death on May 3, 1943, John Bangus was employed at the Milwaukee Shops. He was a member of a crew performing maintenance and repair work, such as the repairing of doors, windows and water leaks, digging sewers, and making sidewalks. While at work on the date last mentioned and engaged in repairing the door of Stall 9 of Roundhouse No. 1, he came into contact with a pipe containing shorted electric wiring and was instantly electrocuted. He is survived by his widow, Anna Rangus, and two minor sons, John and Victor, aged 17 and 12 respectively.

On May 6, 1943, the defendants made a first report of the deceased's fatal injury to the Industrial Commission of Wisconsin. On May 11, 1943, the commission wrote a letter to the widow advising her that the defendants, maintaining self-insurance against liability, were subject to the Workmen's Compensation Act of Wisconsin, St.1943, § 102.01 et seq., and stating further:

"If your husband's fatal injury was sustained while he was performing service in the course of employment, and if the injury arose out of his employment, it will follow that you, as his widow, and living with him at the time of his injury and death, will become entitled to a death benefit equal to four times his average annual earnings (not to exceed $6,000), payable to you in monthly installments the equivalent of 50 per cent of his monthly wage (not to exceed $65 per month). You will also be entitled to reimbursement for necessary burial expense not to exceed the sum of $200.

"If the employer offers payment on account, you should not hesitate to accept it. If there is any question as to whether the amount paid is correct, adjustment can be made at a later time. Your acceptance of any sum on account will in no way prejudice your rights upon a final determination.

"In some cases these matters are stipulated to the commission for award. In other cases benefits are paid as they become due, without the filing of formal stipulation. We are sending copy of this letter, together with a blank form of stipulation, to the Chicago, Milwaukee, St. Paul and Pacific Railroad Company. *If stipulation is presented for signature you should not hesitate to sign the paper.* If no stipulation is presented, you should accept benefits month by month as paid by the employer. *If any question arises in your mind regarding benefits payable under the workmen's compensation act, a letter to this office will bring you detailed information.*

"Will you please fill out and return the enclosed blank? In the event of children who are under fifteen years of age at the

time of your husband's death, there will be additional benefits accruing to you from the State Fund for their support." (Italics supplied.)

This letter was misleading due to its failure to point out among other things that the commission's jurisdiction was limited and applied only in case the deceased was engaged in intrastate commerce, and that if the deceased on the other hand was engaged in interstate commerce when he met his death, her rights as the widow and those of her children would have to be asserted through an administrator under the Federal Employers' Liability Act. Presumably the letter was written and sent with good motives.

Shortly thereafter a claim agent representing the defendants presented to the widow a stipulation the signing of which he stated to her was necessary in order for her to get workmen's compensation. This stipulation, dated May 21, 1943, was signed on behalf of the defendants, and also by the widow, and recited. that the widow and defendants "agree upon the following facts and request the Industrial Commission to make such order or award as the law provides shall be made in such cases." The following facts were set forth in the stipulation: That at the time of his injury deceased was an employee of the defendants; that while performing service growing out of and incidental to his employment deceased on that day sustained personal injury resulting in his immediate death; that the deceased's average weekly earnings had been $35.64; that his total earnings for the year prior to his death had been $1,792.62; and that the defendants had made no previous payments for indemnity or death benefit.

Acting on the stipulation the commission made an award dated June 2, 1943, which recited that it had been made to "appear" that the fatal accident to deceased had occurred "while (he was) performing service growing out of and incidental to his employment * * * *under circumstances* such as (to) entitle the applicant (widow) * * * to a maximum death benefit * * *." (Italics supplied.) The award or order required defendants to pay the widow $6,000 as death benefit in installments, $65 for accrued death benefit payment and $65 on July 3, 1943, and the balance in consecutive monthly installments of the same amount. An allowance also,

to be paid by defendants, of $200 was made for burial expenses. The commission entered a further order that $300 be awarded for the support of Victor Rangus, the son under fifteen years of age, from the State Fund. At this time $110.25 of this amount has been paid.

Defendants have made the required payments to the widow, none of which has been refused. The time within which review of the action of the commission could have been taken has expired.

On February 5, 1944, the plaintiff, previously having been appointed administrator of the deceased's estate by the County Court of Milwaukee County, brought this action in that capacity for the benefit of the widow and minor sons to recover damages from defendants, claiming that, as defendants' employee, the deceased's death was negligently caused while he was engaged in interstate commerce. The plaintiff's claim has been put in issue by the defendants' answer which also sets forth the separate defense of res judicata.

■ The first of the two questions on this motion is whether the deceased met his death while engaged in intrastate commerce. If so, it will not be necessary to inquire whether the proceedings before the Industrial Commission operated as an estoppel precluding the plaintiff from maintaining this action, for there is then no right of recovery here. But if he were engaged in interstate commerce, the question remains whether the matter is res judicata owing to the proceedings before the Wisconsin Industrial Commission.

On the basis of the factual showing made on the motion, was the deceased engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, as amended by the act of Congress approved August 11, 1939? The applicable provisions of the act are contained in the August 11, 1939 amendment, 53 Stat. 1404, 45 U.S.C.A. § 51, and declare: "Any employee of a carrier, *any part* of whose duties as such employee shall be the *furtherance* of interstate or foreign commerce; or shall, *in any way directly or closely and substantially, affect* such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act and of an Act entitled 'An Act relating to the liability of common car-

riers by railroad to their employees in certain cases' (approved April 22, 1908), as the same has been or may hereafter be amended."

The amendment should be liberally construed so as to extend the protection of the act to all employees, any part of whose duties furthers or affects interstate commerce in any way. Edwards v. Baltimore & O. R. Co., 7 Cir., 1942, 131 F.2d 366, 369; Ermin v. Pennsylvania R. Co., D.C.N.Y.1941, 36 F.Supp. 936, 940; Agostino v. Pennsylvania R. Co., D.C.N.Y.1943, 50 F.Supp. 726, 729; Great Northern Ry. Co. v. Industrial Commission of Wisconsin, 1944, 245 Wis. 375, 380, 14 N.W.2d 152, 155.

In Ermin v. Pennsylvania R. Co., supra, the court said (page 940 of 36 F.Supp.):

"There are multitudinous decisions raising hair-splitting interpretations as to whether or not the employee at the time of his accident was actually engaged in interstate commerce. It was to avoid this difficulty that Congress enacted the amendment. It was, undoubtedly, the intent of Congress to include within the scope of the Federal Employers' Liability Act all employees, even those performing intrastate services whose employment meets the requirements of the act. * * *

"The Court should not by a strained construction override the intent of the Congress but should rather decide questions in accordance with the views expressed by the Congress. Here the Congress was trying to remedy a fault, it was enacting legislation which would not require a railroad employee to draw a hairline to determine whether or not at the moment of the accident he was actually engaged in interstate commerce. The Congress was correcting an evil which existed which prevented railroad employees from receiving a just determination of their rights."

In the Ermin case a brakeman was injured while employed as a member of a switching crew engaged in moving from one place in a State to another place in the same State dead engines which had been out of service for several months awaiting repairs, and which had been and would thereafter be used in interstate commerce. On these facts, the court held: "* * * construing the amendment liberally, as it should be construed, the plaintiff at the time of the accident was engaged in interstate commerce. * * *"

In Edwards v. Baltimore & O. R. Co., supra, a mechanic's helper was injured while repairing an automatic stoker of a locomotive which had been used in interstate commerce during the day and it was intended it would resume such service as soon as repaired. The court ruled this work constituted interstate commerce, saying (page 369 of 131 F.2d): "* * * Inasmuch as this locomotive was used in interstate commerce and was destined to resume such service as soon as repaired, plaintiff, engaged in repairing it and fitting it for further commerce, thereby furthered and substantially affected interstate commerce within the meaning of the law."

In Agostino v. Pennsylvania R. Co., supra, the plaintiff when injured was working on new construction consisting of a road bed and tracks of approximately 8,000 ft. in length to be connected at both ends with existing tracks and which, when complete, was intended to replace a portion of the existing tracks. He was injured while he and other employees were spreading cinder ballast for surfacing one of the new tracks. The actual transportation of freight in interstate commerce over the newly constructed tracks began one month after the accident. Holding that the plaintiff's employment was within the amendment, the court said (page 730 of 50 F. Supp.):

"Here the plaintiff was working on a revision of track alignment which was an improvement of the existing highway of interstate commerce. Was not that 'in any way' in 'furtherance' of interstate commerce? Does that not 'affect' such commerce? It was just as important to place rails as to replace rails on existing tracks.

"The conclusion seems inescapable that the construction work, while new, was only an improvement such as an extension, alteration, replacement or repair and, therefore, the plaintiff was engaged in interstate commerce."

In Great Northern Ry. Co. v. Industrial Commission of Wisconsin, supra, the plaintiff sued to set aside the defendant's order awarding death benefit to Carrie Hammer for the death of her son, Christ. From the judgment confirming the commission's award the railway company as plaintiff appealed. In that case the deceased was fatally injured while making general repairs to the plaintiff's ore docks at Su-

perior, then shut down and undergoing annual reconditioning and repairs. For this purpose the docks were shut down every year from mid-December to mid-April. When in operation the docks handled ore as received by train for loading on ore boats for transport to ports on the lower Great Lakes. The court used this language:

"Though the docks were not in operation in the actual handling of ore at the time Hammer was fatally injured, it is clear that the work he was engaged in was in furtherance of interstate commerce or in some way directly or closely and substantially affected interstate commerce. The instrumentality which he was repairing was used exclusively in interstate commerce. The repairs were being made *for the purpose of keeping the ore docks in serviceable condition for* the transportation of ore in *interstate commerce*. Hammer had been engaged in repair work on the docks from May, 1941, to the date of the accident, December 24, 1941. From May to November 7th he painted and made such other repairs as were necessary during the time the docks were in operation, and from November 7th to the day he was injured he and his fellow workmen were engaged in making *general repairs*. Suppose the accident happened during the season of navigation and the docks had been closed because of a strike which lasted a month, or four months, and during the period of the strike Hammer had continued in the same line of repair work and was injured. Could it be successfully maintained that the non-use of the docks during the strike period removed them from commerce? Clearly not. * * *

"We hold that Christ Hammer was engaged in interstate commerce when injured. *It therefore follows that the Industrial Commission of Wisconsin was without jurisdiction;* and that the judgment appealed from must be reversed, with directions to vacate and set aside the award." 14 N.W. 2d 155, 156. (Italics supplied.)

 In the instant action the defendants' instrumentality, Roundhouse No. 1 at the Milwaukee Shops, was operated the year round, the facilities of which were very largely devoted to interstate commerce in the housing and preparing of locomotives previously used and intended for later use in such commerce. In order to keep such instrumentality serviceable, the de-

fendants regularly and steadily employed the deceased as a member of a repair and maintenance crew to repair doors, windows, water leaks, digging sewers, etc. When injured the deceased was engaged in repairing one of the doors of the roundhouse. The deceased's work, proceeding from day to day and more or less routine in character, was obviously an important part of the over-all operation of the instrumentality and was requisite to keeping that instrumentality in serviceable, running condition. The deceased's work, therefore, was in "furtherance" of interstate commerce. It also affected such commerce "closely and substantially." What is true of his work generally is also true of the work he was performing at the time he met his death. The deceased was engaged in interstate commerce within the meaning of the amendment.

The identification with and relationship of the deceased's work to interstate commerce was so full and complete that it becomes unnecessary to consider the question of degree under the statutory phrase "any part of whose duties."

Was the award of the Industrial Commission res judicata on the question of intrastate commerce so as to operate as a bar or estoppel to the prosecution of this action?

 The stipulation between the deceased's widow and defendants on which the award was based did not state whether the deceased was engaged in either interstate or intrastate commerce at the time he met his death. It was completely silent on the subject; it made no mention of any facts or circumstances in that respect. The facts stipulated merely set forth that the deceased was injured in the course of his employment, and that his weekly and annual earnings were certain stated sums, and that no previous payments of workmen's compensation had been made by the defendants. No significance can be attached to the legal conclusion in the stipulation that the railroad and the deceased were both subject to the Workmen's Compensation Act of Wisconsin. In any event the stipulation was restricted and qualified in character. It provided that its parties "request the Industrial Commission to make *such order or award as the law provides shall be made in such cases.*" (Italics supplied.) In other words, jurisdiction was not unqualifiedly invested, and could

not be for that matter. "Where there is no jurisdiction over the subject-matter, consent cannot confer it." Dennison v. Payne, 2 Cir., 293 F. 333, 341. Jurisdiction was only invoked and conferred to the extent of lawfully making an order or award. No facts having been stipulated with reference to interstate or intrastate commerce and no evidence having been received by the commission on the subject, it had nothing on which to base an award. It has been repeatedly held that where there is no competent credible evidence to sustain findings of the commission, its award is in excess of and beyond its powers. Pruno v. Industrial Commission of Wisconsin, 187 Wis. 358, 361, 203 N.W. 330, 204 N.W. 576.

The finding is that the deceased's fatal accident occurred while he was "performing service growing out of and incidental to his employment * * * *under circumstances* such as entitle the applicant * * * to a maximum death benefit." As the stipulation contains no statement on the subject of any such "circumstances" and as there is no evidence thereof, the finding of the existence of such "circumstances" is gratuitous. In this connection "competent credible evidence" is necessary. Accordingly, any mere ex parte and self-serving statements must be disregarded. This is particularly true because the commission is not a court and has none of the inherent powers of a court. Sentinel News Co. v. Industrial Commission, 224 Wis. 355, 271 N.W. 413, 272 N.W. 463, 273 N.W. 819.

The defendants, however, contend that it must be inferred that the commission found that the deceased was engaged in intrastate commerce because otherwise it could not have awarded the death benefit. Such inference is not permissible. In this connection, after carefully reviewing the authorities. I have concluded the situation is ruled by Hoffman v. New York, N. H. & H. R. Co., 2 Cir., 1934, 74 F. 2d 227, certiorari denied 294 U.S. 715, 55 S.Ct. 513, 79 L.Ed. 1248. Moreover, in Wisconsin it is fundamental law that "any order or judgment may be collaterally attacked that is void for want of jurisdiction of the court of the subject-matter of the action." Newcomb v. Ingram, 211 Wis. 88, 98, 243 N.W. 209, 212, 248 N.W. 171. And "one is never estopped to objecting to a determination made by an adminis-

trative body, or by a court for that matter, that the body or court had no jurisdiction to make." Lakelands, Inc. v. Chippewa & Flambeau Improvement Co., 237 Wis. 326, 340, 295 N.W. 919, 925.

For the several reasons expressed, I conclude that the claim of res judicata cannot be sustained.

On the proofs submitted on the defendants' motion for summary judgment and in accordance with the views above expressed, such motion must be denied. The action will stand for trial on the merits.