# APPELLATE DIVISION

OF THE

# SUPREME COURT

OF THE

## State of New York.

---

Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of NORA CULHANE, Respondent, for Compensation under the Workmen's Compensation Law, *v.* ECONOMICAL GARAGE COMPANY, Employer, and EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., Insurance Carrier, Appellants.

Third Department, May 20, 1919.

Workmen's Compensation Law — death of garage employee by accidental discharge of pistol being shown to him by garage foreman — injury not received as incident of work — claim dismissed.

Where a foreman in charge of a garage invited an employee who was returning to the garage after supper, to come into the office and see a pistol which said foreman had taken from an automobile, and the pistol was accidentally discharged causing the death of the employee, an award under the Workmen's Compensation Law should be reversed and the claim dismissed, because said foreman was not acting in the discharge of his duties as such or carrying forward the interests of his employer, but with the deceased employee was engaged in the consummation of a purpose personal to each of them.

APPEAL by the defendants, Economical Garage Company and another, from an award of the State Industrial Commission, made on the 22d day of January, 1919.

*Bertrand L. Pettigrew* [*Walter L. Glenney* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondent.

COCHRANE, J.:

The employer operated a public garage. The employee was employed to wash automobiles. The Commission has made findings as follows: " On October 18, 1918, William F. Culhane was working for his employer at his employer's plant. While engaged in the regular course of his employment he was directed by the foreman in charge of the garage to examine an automatic revolver which had been found in one of the automobiles. While obeying the order of his superior, and while holding out his hand to receive the pistol, and while the pistol was still in the possession of the foreman, it accidentally discharged and a bullet therefrom entered the chest of William F. Culhane, causing his death ten minutes later."

The foregoing findings are entirely unsupported by the evidence. Day was the foreman in charge of the garage having authority to give orders to the deceased in connection with the business. From this fact it has been assumed that whatever he said to Culhane was an order exacting from him obedience. The revolver that caused the fatal accident was in an automobile which was taken to the garage. At the request of the chauffeur the revolver was taken from the automobile by Day, the foreman, and placed in a desk in the office for safekeeping. That was about two o'clock in the afternoon. It appears from the evidence that thereafter Day had no duties in respect to the revolver until such time as it might be called for by the chauffeur or owner of the car. The accident occurred after eleven o'clock. The only testimony in the case as to how it happened was given by Day and is as follows: " Q. And when next did you see the pistol? A. When I called my friend in to show it to him. * * * Q. Did you have anything to do with that pistol as far as your work was concerned? A. Nothing at all — only just happened to pull open the drawer, and I called Will

in to show it to him. Q. Will is Mr. Culhane? A. Mr. Culhane, yes. Q. Where was he when you called him in? A. He was coming in the door of the garage after being out to his supper; he had supper right in the garage and he went out to have a glass of beer after supper. Q. It was the door between the main part. of the garage and the office? A. Yes, sir, a big wicker door. Q. What did you say to him and what did he say to you? A. I heard him and John Rhine coming in, and I says, ' Come in here, Bill, want to show you a pistol I took out of the Massachusetts car to-day,' and he took it and put it against his shoulder and says, ' That's a nice one — let's look at it,' and I was just about to lay it onto his hand when she went off — it was just about slipping off of my hand onto his. * * * Q. You had general supervision over him — told him what he must do? A. I didn't tell him what he must do — I just asked him to come in and look at the pistol."

It clearly appears, therefore, that Day was not acting in his capacity as foreman when he asked the deceased to enter the office for the purpose of looking at the revolver. That was not a command but an invitation. The deceased was under no obligation to comply. For his refusal to do so he could not have been lawfully discharged. Had Day invited Culhane to go across the street to examine the revolver and the accident had there occurred it certainly could not be said that either man was engaged in the performance of a duty he owed his employer. The case does not differ materially because the accident happened on the premises of the employer. Or if the two men had been engaged in a game of cards in the office and while thus engaged the accident had occurred the case would not be materially different. In either of the supposed cases both men would have been engaged outside of their duty. The two men were gratifying their curiosity in respect to the revolver and were doing nothing to further the interest of their employer. In *Matter of Saenger* v. *Locke* (220 N. Y. 556) it was said: " The injury must be received as a natural incident of the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work." Such is not the case here. The respondent cites the case of

*Laurino* v. *Donovan* (186 App. Div. 387). The distinction between that case and this is sufficiently indicated by a single sentence from the opinion: " He was engaged in the discharge of his duties when the explosion occurred." In the instant case neither Day nor Culhane was so engaged. They had both temporarily departed therefrom. to serve a purpose of their own.

In *Matter of Di Salvio* v. *Menihan Company* (225 N. Y. 123) the injured employee crossed the room in which he was working to say good-bye to a fellow-employee who had been drafted into the military service, and while doing so was injured by machinery. The court said: " There was no connection between the employment for which claimant was engaged, of marking soles, and his trip across the shop to say good-bye to a fellow-employee. This act did not enable him either directly or indirectly, in any tangible sense, the better to perform his work, discharge his duties or carry forward the interests of his employer. It was not a natural incident to the work for which he was hired. It did not grow out of any emergency where he was justified in taking an unusual step to protect his employer's interests. It was simply and solely the expression of a private desire and the consummation of a personal purpose." The circumstance that Day was the foreman of Culhane does not affect the situation. Day was not acting in the discharge of his duties as foreman or carrying forward the interests of his employer but with Culhane was engaged in the consummation of a purpose personal to each of them. Culhane was not obeying an order of Day in any proper view of the occurrence. To draw such an inference as that the occurrence must be warped out of its true significance.

The award should be reversed and the claim dismissed.

All concurred.

Award reversed and claim dismissed.