MORGAN COMPANY, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Respondents.

*December 9, 1924—January 13, 1925.*

*Workmen's compensation: Scope of employment: Employee performing work not assigned but not prohibited.*

A female employee, hired to perform work generally in a factory, who swept the floor at the direction of the acting foreman when a machine at which she was working as a helper ran out of material, and then started putting the waste material she had gathered through a cut-off saw, as was customarily done, was furthering the interests of her employer and within the permissible scope of her employment, the evidence disclosing she had worked at various saws and had never been forbidden to do so. *Radtke Bros. & Korsch Co. v. Rutzinski,* 174 Wis. 212, distinguished.    p. 428.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Thompson & Gruenewald,* and oral argument by *Miriam Frye* and *John C. Thompson,* all of Oshkosh.

For the respondent *Industrial Commission* there was a brief by the *Attorney General, Mortimer Levitan,* assistant attorney general, and *F. C. Siebold,* law examiner, and oral argument by *Mr. Siebold.*

OWEN, J.    This is an appeal from a judgment of the circuit court for Dane county affirming an award of the *Industrial Commission.*    It appears that on the 29th day of August, 1922, Susan Weck was working in a sash and blind factory as the employee of the *Morgan Company.*    While putting waste through a cut-off saw on that day she sustained the injury which resulted in her death.    The *Industrial Commission* found that at the time of the injury she was performing services growing out of and incidental to her employment, and made an award to her dependents.

The appellant attacks the award on the ground that at the time of the injury the employee was not performing services growing out of and incidental to her employment. The determination of the question thus presented requires a consideration of the terms of the contract of employment in order that it may be ascertained what work she was employed to do. Upon this question the record is meager, to say the least. The employee being dead, the only direct evidence upon that question comes from the officers of the employing company. The superintendent of the factory testified that he employed her and that she was hired merely as a helper to take away from a small saw that splits up pieces for blind stiles. She was at work in the factory for five days. The evidence shows that she did work as a helper in taking away from a saw operated by one Wilke for a period of not to exceed two and one-half days during that time. It thus appears that during at least one half of the time while she was employed in the factory she was doing other kinds of work, but what that other work was does not clearly appear. It does appear that upon the day of the accident the machine upon which she was working as a helper ran out of material; that she then went to the assistant or acting foreman and asked what she should do. She was told to sweep up the room. After sweeping up half of the room she went to the assistant foreman and asked him what she should then do. She was told to finish sweeping the room and when she had finished that to come back to the foreman again and he would have something else for her to do. He testified that he wanted her to unload a couple of loads of blind rails. It appears that when she had completed sweeping the room she took the waste material which she had swept up to a cut-off saw, through which it was customary to run such material, and started to run it through the saw. Mr. Wilke, the employee who operated the saw at which she was working as helper, saw her putting the

waste material through the cut-off saw, and told her that she should not do that, that she would get hurt. She replied that she had been there before, meaning that she had run such saws before.

Wilke testified that he had orders to keep the girls away from the saws, that is, to prevent them from operating the saws. But it does not appear that the deceased employee knew that Wilke had such orders, nor does it appear that she had any reason to regard this statement of Mr. Wilke as an authoritative order from her employer or anything more than a mere caution or warning. Her injuries were sustained while putting the waste material through that saw. While the direct testimony of the superintendent is to the effect that the deceased was employed as a helper to take away from a self-setting rip-saw, there are many circumstances to indicate that as a matter of fact she was employed to work generally in this factory. The same superintendent testified concerning her instructions: "The only instructions she had, she was taken to the foreman with instructions what she was to do. Q. And the foreman would instruct her from day to day and from time to time? A. Yes, sir." This would seem to indicate that she was hired to do whatever the foreman told her to do. It further appears that she was engaged at taking away from the rip-saw not more than half of her time. It also appears that when there was no work to do in taking away from the rip-saw she made application to the foreman for instructions. Upon the day in question she made application to the assistant foreman and he told her to sweep up. He also testified that when she got through sweeping up he wanted her to unload a couple of loads of blind rails. This would indicate that the work which she was expected to do pursuant to her employment was quite general.

There is evidence that it was customary to put the waste material which was swept up from the floor through the cutting machine. While there is testimony to the effect that

the deceased was not expected to run the cutting machine, there is no evidence that she was ever forbidden by any one to run the cutting machine, except in the one instance when Wilke told her that she should not attempt to operate it. On the contrary, the assistant foreman testified that he had seen her operate various saws from time to time, although not during times when he was acting as foreman; that he had never forbidden her to operate the saws and did not know that any one else had. The superintendent also testified that there were a "number of women employed in the factory, and that if they develop into operators they sometimes operate saws, depending entirely upon their efficiency, but the most of them are helpers." It would appear that if the women working in the plant develop into operators they must have some sort of an apprenticeship to acquire the experience necessary, and, taken with all the evidence in the case, especially the evidence of the foreman that he had seen the deceased working at the saws with no warning or protest from him, justifies the inference that while the deceased employee was putting the waste material which she had swept up from the floor through the cut-off saw she was acting within the permissible scope of her employment.

The facts of this case clearly distinguish it from *Radtke Bros. & Korsch Co. v. Rutzinski,* 174 Wis. 212, 183 N. W. 168, where a boy fourteen years of age sustained injuries while working at a paper cutter at which he had been forbidden to work, preparing a tablet for his own use. Here the employee was hired to work generally in the factory, she had not been forbidden by the employer to operate the saw, and while operating it she was furthering the interest of her employer. The award of the *Industrial Commission* was properly affirmed by the circuit court.

*By the Court.*—Judgment affirmed.