KRAFT, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*March 5—April 1, 1930.*

For the appellant there was a brief by *Brown, Pradt & Genrich,* and oral argument by *Fred W. Genrich, Jr.,* all of Wausau.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan* and *F. C. Seibold,* assistant attorneys general, and oral argument by *Mr. Seibold.*

CROWNHART, J.   It appears that the defendant Maynard Schuh was a married man, living in the vicinity of Elcho, Wisconsin.   Some time in December, 1926, he received a letter from a Mr. Shepard, who was superintendent of an estate owned by J. L. Kraft, at the same place, reading as follows:

"Dear Maynard: If you have nothing definite on hand maybe you would be interested in my offer.   I am getting ready to fill in more dirt in the swamp here we covered last year, and if you care to come to work I will pay you $3.50 per day and you can live in our house on the farm and have your wood and house rent free until the first of April, and from then on you can work by the month as we talked of this fall.   Please let me know at once, as I would like to get started as soon as possible."

Schuh accepted the offer and went to work for Kraft. He and his wife lived on the place in a house that had been formerly owned by Shepard.   Kraft owned 250 acres of land, of which about sixteen acres were under cultivation. Part of it bordered on Enterprise Lake, and on this lake he had some thirteen cottages.   Kraft resided in Chicago and was engaged in the cheese business.   This lake property he used for his summer outings, and the cottages were used by

friends of his whom he invited to his place. Part of the premises was separated from the rest by a swamp, and in order to make the place useful as a whole, Mr. Kraft took steps to have a road built across the swamp so that persons and cattle might go from one part to the other. This was the work that Schuh was engaged to perform, pursuant to the letter above quoted. However, as spring came on there was no change in the contract, but Schuh continued to work by the day under the directions of Shepard, at whatever he was required to do. In fact, Kraft repudiated the monthly part of the offer, to take effect April 1, 1928. Some of the time Schuh worked at cultivating the improved land, and part of the time he worked around the cottages, and at other times he was clearing the land. At one time he was engaged in fixing a lily pond and a rose garden.

Under the contract of employment Schuh was to live in the Shepard house on the farm and have his "wood and house rent free." During the time he worked for Kraft he lived on the farm and had his wood free, but the wood was not cut stove length except one load, so it was necessary for it to be cut into stove length. The wood was in the shape of poles that were taken while clearing land. On October 24, 1927, in the evening, after supper, Schuh was using a sawing machine to cut up poles into wood of stove length, when he was injured by reason of a pulley breaking and striking his leg.

There is no dispute about the injury or the amount of compensation, if any is to be allowed. The questions that arise are: First, were the parties under compensation? Second, was Schuh performing services growing out of and incidental to his employment?

The appellant contends that Schuh was employed at farm labor, and that because thereof he was not covered by compensation. The Industrial Commission found that Schuh was engaged otherwise than in farm labor, and was covered

by compensation, and the circuit court made the same finding and sustained the award. This question seems to be strictly one of fact, and if so, the determination of the Industrial Commission is final. Schuh testified that the greater part of his work was not farm labor, and that he was not hired as a farm laborer. It is clear from the letter employing him that he was not engaged for farm labor, and there seems to be credible evidence that the dominant part of his employment was other than what would be considered farm labor. Mr. Kraft claims that his purpose was to make a dairy farm out of the estate. No matter what his intention, he had not yet a single cow on the property, and his dairy farm was still in the future. On this question we think the finding of the Industrial Commission must prevail.

The second contention of the appellant is that Schuh was not injured while in the course of his employment or incidental thereto. The letter of hire is perhaps susceptible to two constructions: one, that the free wood to be furnished was uncut wood, and that Schuh would have to find his own time and methods of preparing it for the stove. On the other hand, "free" wood might well be construed to mean wood prepared ready for stove use. As a matter of practice, the testimony of Schuh is that sometimes he would go out to cut wood on the time of his employer, and part of the time he would cut the wood on his own time. He testified that he understood "free" wood to mean free—ready for use. Shepard testified to the contrary. A day's work usually consisted of nine hours. At the time of the accident Schuh was cutting wood after the nine-hour day was finished. However, there was no agreement as to the length of a day's work. The real question is whether or not the contract to furnish free wood meant wood prepared for the stove. If the contract can be reasonably so interpreted to include stove wood, ready for use, then it must be held that although working after hours he was working for his employer at the time he was injured, and is entitled to compensation. It is the

function of the commission to draw the proper inferences from the facts.

The employee was to have "wood and house rent free." "House rent free" undoubtedly meant a house ready and fit for occupancy, and it is equally reasonable to hold that "free" wood meant wood ready for the use and purpose for which it was intended. That would be wood properly cut, delivered at the house. That being so, when Schuh was cutting the wood he was doing work for his employer at the time.

The award of the commission is supported by credible evidence, and the judgment of the circuit court sustaining the award is right.

*By the Court.*—The judgment of the circuit court is affirmed.