RACINE COUNTY and another, Appellants, vs. INDUSTRIAL
COMMISSION and others, Respondents.

*December 9, 1932—January 10, 1933.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

For the respondents there was a brief by *Rogers & Owens* of Portage, attorneys for Minerva Stewart, and the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the State and the Industrial Commission, and oral argument by *Mr. Harlan B. Rogers* and *Mr. Levitan.*

FOWLER, J. The deceased was in the service of Racine county as a supervising teacher of rural schools. Both she and the county were subject to the workmen's compensation act. The only question litigated is whether at the time of the accident resulting in her death the deceased was "performing services growing out of and incidental to her employment."

In the performance of her duties as supervising teacher the deceased used her own automobile. At about 10:45 in the night of April 23, 1931, her automobile was found on its side in the Fox river. The automobile tracks indicated that it ran off the highway into the river at a bridge. Miss Stewart was in the automobile drowned. Her watch had stopped at 9 o'clock. She was last seen at a hotel in Burlington where she took dinner from 6:30 to 7:30 o'clock. She was then examining some papers, the nature of which does not affirmatively appear. She had left her home in the morning and visited two schools in the vicinity of Burlington during the day and had left the one last visited around 5 o'clock. At 5:30 o'clock she had stopped to take gasoline at a service station at Waterford, a few miles from Burlington and near the school last visited. The place where she was found was not on the most direct route from Burlington to the place of her residence, but on one six miles farther, which, however, might be taken in preference and was on the way towards the schools she was to visit the next day. Besides visiting schools, the duties of the deceased at times required her to visit parents and pupils, and she often performed these duties in the evening, returning home at times as late as 11 o'clock. Schools which she was required to visit other than those visited on the day of her death were located south of Burlington. She had been sick and during the day had expressed solicitude over being behind with her work. She was absorbed in her work and conscientiously devoted

herself to it. She was not in the habit of going out evenings upon social calls or for personal reasons, and there is no evidence that she had any personal business or engagement to account for her being at Burlington or at the place where she was found.

The appellants contend that the burden is on the claimant to prove that at the time of the accident involved Miss Stewart was performing service incidental to her employment; that this requires proof of just what she was doing at the time; that as there is no such proof, the inference that she was performing service incidental to her employment rests upon mere speculation; and that the finding that she was so engaged is entirely without support and the claimants' case falls.

The Industrial Commission in closing their recital of evidentiary facts say:

"It appears to the commission, in drawing inferences from all the testimony, that whatever her (deceased's) objective was, it was probably something connected with her duties as supervising teacher and that at the time of her accident she was performing services growing out of and incidental to her employment. It even seems proper, under the circumstances, and in the absence of any showing to the contrary, to indulge in a presumption of the continuity of the course of her employment to the time of her accident."

We are of opinion that the inference of the commission was warranted. It appears without dispute that on the day of her death Miss Stewart was engaged in the performance of the duties of her employment. A condition once proven to exist is presumed to continue in the absence of evidence to the contrary. The evidentiary facts, as a whole, point more directly to the conclusion that at the time of the accident the deceased was on some mission connected with her work than that she was on business of her own. At least the commission might properly so conclude.

The appellants claim that the accident occurred at a time when the deceased should regularly have been home from her day's work of school visitation, and at a place where she was not required to be in order to get home after the performance of her duty of visitation, and that she cannot, therefore, be held to have been in the performance of her duty. They concede, however, that had the accident occurred while she was proceeding directly home from Waterford, where she took gasoline, that she would have been within the act. The concession is compelled by *Schmiedeke v. Four Wheel Drive Auto Co.* 192 Wis. 574, 213 N. W. 292. The point being conceded that if injured by accident while on the way home from the day's work the deceased was within the act, the conclusion follows that she was within the act under the proven facts. She took her meals when at home at a private residence away from her rooms. The mistress of the residence was under instructions not to await or prepare meals for her when she was away on her trips of visitation. There was no restaurant or hotel or other place where meals were regularly served at the village where she had her rooms. Being at Waterford, where she took gasoline, at 5:30 o'clock, she would not arrive home by the dinner hour. Burlington, six miles from Waterford, was the only place in the vicinity having a hotel or restaurant. It was entirely proper and regular for her to go to Burlington for her dinner. Being there properly and incidentally to the performance of her duties, it was immaterial when or by what route she returned from there to her rooms. If it affirmatively appeared that she delayed her departure or departed from the direct route for some personal reason, it would not take her without the act. *Fronce v. Prosperity Co.* 255 N. Y. 613, 175 N. E. 336; *Webb v. North Side Amusement Co.* 298 Pa. St. 58, 147 Atl. 846. But no personal reason appears, and the deviation from the most direct route, entailing only six miles addi-

tional travel, did not constitute any substantial or material variation, especially as she may have considered it a better or safer route for night travel, or may have gotten onto the road where found by mistake at a point where it branched off from the direct route at a somewhat acute angle.

*By the Court.*—The judgment of the circuit court is affirmed.