OLSON RUG COMPANY and another, Respondents, vs. IN-
DUSTRIAL COMMISSION, Defendant: CARLSON, Appellant.

*April 5—May 1, 1934.*

For the appellant there was a brief by *George Pfirshing*
of Chicago, attorney, and *Hill, Beckwith & Harrington* of
Madison of counsel, and oral argument by *John T. Harring-
ton.*

For the respondents there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *C. J. Otjen.*

NELSON, J. The defendant Carlson, hereafter called the applicant, was severely injured in an automobile accident while driving from Oconomowoc to Milwaukee.

The only question presented on this appeal is whether the applicant, at the time of the accident, was performing service growing out of and incidental to his employment. Stats. 1929, sec. 102.03 (2).

The commission concluded that at the time of the accident the applicant was performing service growing out of and incidental to his employment and awarded compensation accordingly. The facts are substantially undisputed. Since the conclusion of the commission is a mere conclusion of law, we may review the facts for the purpose of ascertaining whether they support the conclusion of the commission. *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194.

The applicant, a resident of Illinois, entered the employ of the Olson Rug Company, hereafter called the company, during the month of November, 1930. He was at first a member of a crew engaged in soliciting orders for the company. Later on he became the foreman of such a crew. During the winter of 1931 the applicant and his crew moved into Wisconsin. For about two weeks prior to May 18th the crew had been working in Milwaukee. On May 18th the applicant and his crew worked in the rain and got very wet, as a result of which Harry Allen, one of the crew, contracted a severe cold. At that time the members of the crew were rooming at the house of one Theodore Sutton. Mr. Allen worked on May 19th and a part of May 20th. On May 21st he lay around his room all day nursing a bad cold. He called up his wife, who resided in Chicago, and told her of his condition. At her suggestion he decided to go to Oconomowoc, where his parents resided, for two or three days.

He made arrangements with Mr. Sutton to transport him to his parents' home in Sutton's automobile. It was arranged to make the trip that evening. When the applicant returned to the rooming-house after his day's work, Allen told him of his plans and asked him to take him to Oconomowoc. Allen was feeling "pretty tough," and applicant consented to take him to his parents' home. Sutton's automobile having been procured from the garage, it was driven to Oconomowoc by the applicant. Sutton, the owner of the automobile, and another member of the crew, rode along. After Allen was left at his parents' home the applicant proceeded to drive the automobile back to Milwaukee. A short distance out of Oconomowoc the applicant was blinded by the lights of another car and, as a result, he did not observe a curve in the highway. The automobile ran off the highway and into a telephone pole causing the injuries for which compensation is sought.

The applicant contends that at the time of the accident he was performing service growing out of and incidental to his employment, and therefore is entitled to compensation because he was rendering a service to Allen, which it was the duty of the company to render to him under the circumstances.

It is clear that unless the applicant, at the time of the accident, was performing some service for the company, which it was his duty as foreman to perform, or the duty of the company to render to Allen, he cannot recover.

Under the contract of employment the company did not undertake to furnish or select rooming places for the members of its crew. It had no control whatever over the place where the crew stayed. Although the applicant generally attended to the matter of obtaining rooms for the crew, what he did in that respect was done pursuant to an understanding had with the members of the crew, not in performance of a duty imposed upon him by the company.

Liability under the Workmen's Compensation Act exists only when the employee is performing service growing out of and incidental to his employment. 1929 Stats., sec. 102.03 (2). An injury received by one who is merely performing a friendly act or courtesy for a coemployee is not compensable unless, at the time of performing such act, the employer owes to the employee a duty to perform the act by virtue of the contract of employment or the law. The service performed by the applicant was outside of his hours of employment, outside of what properly may be called his place of employment and in a place not provided or furnished by the employer or over which it had any control.

In *Conveyors Corporation v. Industrial Comm.* 200 Wis. 512, 228 N. W. 118, we held that the employer there owed a duty to rescue an employee from a position of imminent danger while engaged in the work of his employer, and that consequently it was the duty of another employee "to act immediately and with the greatest possible speed to rescue" a coemployee because of the duty owed by the employer. An award of compensation to the widow of the employee who lost his life while attempting the rescue of another employee was sustained. It was there said:

"One employee attempting the rescue of his fellow employee is engaged in the performance of a duty incumbent on a manufacturer in the conduct of his business. Although such emergencies do not regularly occur, they do occur at times in the usual course of any manufacturing business, and an employee engaged in such rescue may properly be held to be engaged in the usual course of his employer's business."

That case is clearly distinguishable from this. There the employee sought to be rescued was in a position of imminent danger. Here Allen was not in imminent danger and what the applicant did for him was not in the nature of a rescue. Allen had a hard cold, felt "pretty tough," but had not even consulted a physician. For a day or two he had lain around

his room. There, the employee sought to be rescued was actually engaged in the performance of work for his employer just prior to his being gassed. Here the employee was not at work but was ill at his rooming-house, having performed no work for his employer for at least a day or two. There, the duty of the employer to rescue the employee was imperative. That case does not support the contention that it was the duty of the company to transport Allen to his parents' home.

In *Western Fruit Co. v. Industrial Comm.* 206 Wis. 125, 238 N. W. 854, compensation was sought by a widow for the death of her husband which resulted from an automobile collision. The collision occurred after working hours and while the deceased was driving his automobile home accompanied by two women employees who were customarily taken to their homes by the deceased. It was there held that, since no duty or obligation rested upon the company to transport the two women employees, and since such act was a mere courtesy extended to them by the deceased, no recovery could be had from the employer. It is our opinion that the principles of that case come pretty close to ruling this. Unless there was a duty on the part of the company or of the applicant as an employee of the company to transport Allen to his parents' home, no recovery of compensation may be had by an employee for injuries sustained by him while engaged in rendering a friendly and courteous service to a fellow employee, who was not at the time performing services for his employer, who was not in a position of imminent danger, and who was not at the time upon the premises of his employer.

To permit the applicant to recover compensation under the undisputed facts of this case would amount to the conferring of a benefit upon him and the imposing of a burden upon the company not warranted by the act.

It is our conclusion that the undisputed facts show, as a matter of law, that at the time of the accident the applicant was not performing service for his employer growing out of and incidental to his employment, and that the conclusion of the commission to the contrary is without support in the evidence.

*By the Court.*—Judgment affirmed.