SEVERSON and others, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*March 6—March 31, 1936.*

170

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *W. L. Jackman.*

MARTIN, J. Sam and Albert Severson, as copartners, operated a farm and a fleet of milk trucks. They employed seven or eight truck drivers, who, in addition to hauling milk, did general farm work. They were paid by the month, and received room and board at the farm. Although driving a

milk truck was ordinarily a one-man job, it was customary for the drivers to go along to assist other drivers at times, which practice was known to the Severson brothers, who tacitly approved of it.

The truck drivers had their own routes, and usually collected milk from the farms on their respective routes in the morning and evening, delivering the milk to the White House Milk Company plant in the city of Manitowoc. Kenneth Aubel had his own designated milk route, and had been employed as a truck driver by the Severson brothers for approximately two years prior to August 2, 1933. On that date he was informed by his employers that his evening route had been temporarily discontinued. It appears that one William Berg, one of the truck drivers who was required to cover his route on the evening of August 2d, requested Aubel to go along and assist him. Albert Severson, one of the employers, heard this conversation, and thereafter told Aubel to see some farmers on his route to inform them that there would be no collection that evening and also to deliver some test bottles.

It appears that Aubel left the Severson brothers' farm in his own car, accompanied by another truck driver by the name of Peterson. After he had called on some of the farmers on his route for the purpose indicated, he joined Berg, and Peterson drove Aubel's car back to the Severson farm. From the point on Berg's route where he was joined by Aubel, it appears that they collected milk at seventeen farms, Aubel assisting in loading it on the Berg truck. When they finished collecting the milk, they drove on the main highway to Manitowoc. While en route to the White House Milk Company plant the Berg truck ran into a ditch and Aubel was killed.

It is the contention of respondents that Aubel was merely performing a personal courtesy, and was not within the scope of his employment when the accident occurred. The Industrial Commission found:

"The drivers occasionally helped one another to the knowledge of the respondents; that both Kenneth Aubel and Wil-

liam Berg were in the employ of the respondents under a contract of hire and at the time of his fatal injury Kenneth Aubel was assisting a coemployee and performing service for the respondents."

From the facts found, the examiners concluded that at the time of his fatal injury Kenneth Aubel was an employee of the respondents within the meaning of the Workmen's Compensation Act, and was performing service growing out of and incidental to his employment. Upon the petition for review of the examiners' findings, in affirming the findings and order of the examiners, the commission said:

"The first question which arises upon the petition for review of the examiners' findings may be briefly stated as follows: An employee, following conclusion of his own service for the day, at the request of a coemployee, assists the latter in completing his work. The employer has knowledge of similar action upon previous occasions. Is the employee who assists engaged in performing service growing out of and incidental to his employment? The commission believes that the answer must be in the affirmative. Generally speaking, the service that one employee renders to another, unless an express prohibition has been promulgated, is to be considered service reasonably incident to that of the assisting employee. Certainly that is true where, with knowledge of the employer, the practice of assistance is continued without remonstrance on the employer's part."

Sam Severson, one of the employers, testified that the drivers helped one another. He was asked: "Did you know that they were doing that? A. Yes, we knew that.

"Q. Did you ever make any objections to that practice? A. No."

Asked whether he encouraged that practice, he replied: "Well, not necessarily," but he "knew they were doing it."

Albert Severson, the other employer, was asked: "Will you state whether or not it was the duty of one man to help another? A. Well, we liked to have them do that if they could,

but unless it was absolutely necessary, we didn't instruct them to do so."

He further testified: "Q. And on those evenings when some driver or other would not make his route, he would accompany some other driver? A. Yes.

"Q. And you knew it was a practice among these drivers to help one another? A. Yes."

As the testimony of the employers clearly indicates, Aubel was injured while performing a service which, while under no absolute duty to perform, it was the type of duty which had the approval of the employers. He was performing an "expected" service rather than a "required" duty.

In *Sheboygan Airways, Inc., v. Industrial Comm.* 209 Wis. 352, 245 N. W. 178, which involved the question of whether a pilot, who was killed upon the falling of an airplane in which he was carrying two passengers, was acting within the scope of his employment, the court held that the question was one of fact for the Industrial Commission, and remanded the cause for further proceedings. There the court, quoting from *Radtke Bros. & Korsch Co. v. Rutzinski,* 174 Wis. 212, 217, 183 N. W. 168, said:

" 'Where a claimant . . . does acts different in kind from what he is expected or required to do, which are forbidden and outside the range of his service, he cannot recover.' "

However, the court further said: "Of course, that rule is not applicable when an employee, in furtherance of his employer's interests and not merely to further his own personal ends, commits some acts of disobedience as in *Frint Motor Car Co. v. Industrial Comm.* 168 Wis. 436, 170 N. W. 285."

In the *Frint Motor Car Co. Case, supra,* the claimant, a mechanic, was given charge of his employer's pit at automobile races, with instructions to work on the cars there and not to leave the pit. Contrary to orders, he left the pit and stood upon the fence at the inside of the race track. While there, during a race, he saw one of his employer's cars stop on the

track a short distance away. He ran toward it, but before reaching it was struck by an oncoming car and killed. It was there held that he was at the time performing service growing out of and incidental to his employment, and that the mere fact that he had disobeyed orders did not preclude an award of compensation for his death. See cases cited at page 439.

*Morgan Co. v. Industrial Comm.* 185 Wis. 428, 431, 201 N. W. 738, involved a situation where a woman hired to work in a factory was told to sweep the floor of a room. After finishing her sweeping, she put the waste material through a cut-off saw, and in so doing sustained fatal injuries. There was evidence that it was customary to put the waste material through the cutting machine, and while there was testimony that the deceased was not expected to run the machine, there was no evidence that she had been forbidden except in one instance. The court held that the evidence "justifies the inference that while the deceased employee was putting the waste material which she had swept up from the floor through the cut-off saw she was acting within the *permissive* scope of her employment."

In *Kraft v. Industrial Comm.* 201 Wis. 339, 230 N. W. 36, where an employee, who by his contract of employment was "to have 'wood and house rent free'" and a wage of $3.50 per day, was injured while cutting wood after the termination of his nine-hour workday, he was awarded compensation based upon the commission's inference that the employee was working for his employer at the time of his injury. In affirming the award, the court said:

"The employee was to have 'wood and house rent free.' 'House rent free' undoubtedly meant a house ready and fit for occupancy, and it is equally reasonable to hold that 'free' wood meant wood ready for the use and purpose for which it was intended. That would be wood properly cut, delivered at the house. That being so, when Schuh was cutting the wood he was doing work for his employer at the time."

The respondents contend that the instant case is ruled by *Olson Rug Co. v. Industrial Comm.* 215 Wis. 344, 254 N. W. 519. The facts there are clearly distinguishable from those in the case at bar. In the *Olson Rug Co. Case,* the foreman of a traveling crew of salesmen was injured in an automobile accident while driving the car of the proprietor of the place where the salesmen were rooming, on a trip taken after working hours to transport a fellow salesman, who had contracted a cold, to the home of the salesman's parents in another town. It was held that the foreman was not performing services growing out of and incidental to his employment, because there was no duty on the part of the company or the applicant as an employee of the company to transport the salesman to his parents' home. The court said:

". . . No recovery of compensation may be had by an employee for injuries sustained by him while engaged in rendering a friendly and courteous service to a fellow employee, who was not at the time performing services for his employer, who was not in a position of imminent danger, and who was not at the time upon the premises of his employer."

In the instant case, according to the undisputed testimony, Kenneth Aubel and the other truck drivers were in the general employ of the Severson brothers. They roomed and boarded at the farm. Their work was not confined to hauling milk, but included general farm work whenever required. It is conceded that the employers had actual knowledge that it was customary for the employees to assist other employees in hauling the milk. One of the employers testified: "We liked to have them do that if they could."

The Workmen's Compensation Act must be liberally construed in favor of including all service that can in any sense be said to reasonably come within it. *Brienen v. Wisconsin Public Service Co.* 166 Wis. 24, 163 N. W. 182. On the facts in this case, it would be a very narrow interpretation of the Workmen's Compensation Act to hold that the deceased,

who at the time when injured was performing a duty that he was expected to perform, was not acting within the scope of his employment.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to reinstate the award of the Industrial Commission and to affirm such award.