Continental Baking Company and another, Appellants, vs. Industrial Commission and another, Respondents.

*June 3—September 15, 1936.*

For the appellants there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *C. J. Otjen*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan*, assistant attorney general, and oral argument by *Mr. Levitan*.

*Milton T. Murray* of Milwaukee, for the respondent Inez Drew.

The following opinion was filed June 22, 1936:

FRITZ, J.   Upon this appeal the principal question is whether the evidence warrants the commission's determination that Fay Drew was injured on August 31, 1933, while performing services growing out of and incidental to his employment, within the terms and provisions of sec. 102.03, Stats.   It is undisputed that he was in the employment of the Continental Baking Company (hereinafter called the Baking Company) for four years prior to that date, but plaintiffs contend that on the night of his injury he was doing unauthorized acts in an unauthorized way and outside the scope of his employment, although he thought they were for the benefit of his employer; and that, under those conditions, there is no liability under the compensation act.

There is no material conflict in the evidence.   Drew was employed as a supervisor by the Baking Company at its branch for the Milwaukee district to supervise the sale and delivery of its products by ten routemen to retail food stores in the city of South Milwaukee and adjacent territory.   As is stated in the findings made by the majority of the commissioners, in approving an award reported by an examiner, Drew's "duties, among other things, were to supervise sales in his territory, to keep the company informed

of anything that came up that he could not handle, to pull routes when sales were off, to break in new route salesmen, to keep up sales and open new accounts and generally to be responsible for sales in his territory." He was killed upon his automobile leaving the road and overturning while he was returning from South Milwaukee to Milwaukee (where he resided) after midnight on August 30, 1933, with Al Thiesen, one of the Baking Company's routemen, who had formerly delivered its products in South Milwaukee. The accident may have been due to either the sudden deflation of a tire, or to excessive speed.

Drew's daily work usually began at 7 a. m. and continued until he returned and completed his report at his employer's Milwaukee plant and office at about 4 p. m. However, on the night of the accident, Drew, accompanied by Thiesen, had driven to South Milwaukee in Drew's automobile and attended a meeting held there by the South Milwaukee Retail Food Dealers Association from 8 to 11 p. m., and after that meeting, until midnight, Drew and Thiesen attended a waitress' birthday party at a restaurant to which Drew had been invited. The meeting had been called by the association to consider taking action in relation to three dealers who kept their stores open on Sundays. Some of the association's members, who were customers of the Baking Company, had asked its routeman, William Schroeder, and also Drew, to stop deliveries to those three dealers, and had threatened to have the association's members quit taking the Baking Company's products if those deliveries were not stopped. Drew had reported the matter to L. A. Barrett, who was the Baking Company's regional manager at Chicago, but was also acting temporarily as its manager at Milwaukee. On August 27, 1933, Barrett, accompanied by Drew and Schroeder, had called on several of the association's members and one of the dealers who refused to close on Sundays. Barrett, in discussing the matter with the

members, had told them that it was the Baking Company's policy not to stop serving any customer at the request of another. He urged the other dealer to close his store on Sundays. After those conferences, Barrett told Drew and Schroeder that, because of the Baking Company's policy, all customers would have to be served, and that Drew should not worry about or pay too much attention to the matter, and it would soon clear up by itself. However, when Drew called at their stores on August 30, 1933, the vice-president and the secretary of the association asked him to come to a meeting of the members of the association called for that night to consider the Sunday-closing matter. When Drew returned to the Baking Company's plant at 4 p. m. that afternoon, he told Frank Borisch, a senior supervisor, about the proposed meeting, and asked him to accompany him there and also to the birthday party. Borisch replied that he could not go because of other work which he had to do for their employer. He did not tell Drew not to go, but he testified herein that it was not customary for supervisors to attend meetings for any such purpose, and that they were to report such matters to the plant manager. Drew, after his conversation with Borisch, and in the latter's hearing, asked Thiesen to accompany him to the meeting and the party. Barrett did not hear the conversation between Drew and Borisch although he was near to them at the time. Drew went into Barrett's office after inviting Thiesen, and there he talked with Barrett, but did not tell him about the proposed meeting or that he had been requested to attend and intended to go.

The Baking Company had two automobiles and a truck, which its supervisors had been told to use when they went out on the company's business. All of its cars were equipped with governors limiting the speed to thirty-five miles per hour, were covered by proper automobile liability insurance, and were painted for advertising purposes. But Drew used

his own car on the night of the accident instead of using or asking for one of his employer's cars. He originally intended to have his wife and Thiesen's wife accompany them on the trip and attend the birthday party, but because Thiesen had not mentioned the party to his wife, she decided not to go and therefore Mrs. Drew did not go. At the meeting, Drew told the association members that under the Baking Company's policy its routemen were not permitted to stop delivering to a customer, but that in order to aid the association the routeman, in delivering bread to dealers who refused to close their stores on Sundays, would occasionally omit to make a delivery or not deliver as much as was desired. The examiner appointed to take the testimony and who reported the award found "that it was a general policy of the respondent not to interfere in controversial matters such as would likely be brought up at the meeting in South Milwaukee . . . ; also, that it was one of the rules of the respondent that any employee on company business should use cars furnished by the respondent; that this rule was not always strictly adhered to." The commission did not mention that policy and that rule in the findings which it made in approving the award.

As there is no substantial dispute as to the material facts, the determination by the examiner and the commission that Drew was injured while performing services growing out of and incidental to his employment was virtually but a conclusion of law, which may be reviewed on appeal "for the purpose of ascertaining whether they support the conclusion of the commission." *Olson Rug Co. v. Industrial Comm.* 215 Wis. 344, 345, 254 N. W. 519, citing *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194. Upon such a review, the following facts and conditions are of controlling significance: Drew, at the time of his injury, was returning by the usual route, from a trip which he made primarily for the purpose of attending the association's meeting in order

to further the sales and interests of his employer, but incidentally thereto he also intended to attend the birthday party. He had reported the trouble at South Milwaukee to Barrett, to whom, as the temporary manager at Milwaukee, it was customary for supervisors to report such matters; and, after hearing Barrett tell some of the dealers that it was the Baking Company's policy not to stop deliveries as they· requested, he had been told by Barrett not to worry or pay too much attention to that situation, and it would clear up by itself. However, he was not given any directions as to what he should do, or that he should not do anything on his own accord without first reporting to Barrett. On the contrary, Barrett's statement that he should not pay too much attention rather implied that Drew was to give some attention to the matter, and left the nature or extent thereof to his judgment to some extent, at least. Under those conditions, Drew's omission to inform Barrett, when he was requested to attend the meeting, that he was going there on behalf of the Baking Company was not necessarily an inexcusable violation of its rules or customary practice. In fact, the omission of his senior supervisor, Borisch, to even suggest to Drew that his attendance at that meeting was unauthorized rather indicates that his attendance was not a violation of any such rule or practice. Likewise, in view of the fact that the employer's directions as to employees using only its cars when out on its business were not always strictly adhered to, Drew's use of his own automobile instead of one of his employer's did not necessarily defeat the employer's obligations under the Workmen's Compensation Act, while he was performing services which were intended for its benefit and grew out of and were incidental to his employment. In view of those significant facts and conditions, the commission was warranted in concluding that Drew's trip to South Milwaukee and his attendance at the meeting grew out of and was incidental to his employment, even though he

had not informed Barrett before attending that meeting that he was going and Barrett had not expressly authorized him to go.

In this case there were certainly no such explicit orders by the employer, and such violations thereof as were established in *Seaman Body Corp. v. Industrial Comm.* 202 Wis. 13, 231 N. W. 251, or in *Frint Motor Car Co. v. Industrial Comm.* 168 Wis. 436, 170 N. W. 285, and *Morgan Co. v. Industrial Comm.* 185 Wis. 428, 431, 201 N. W. 738, 740. Nevertheless, in the two cases last cited, the mere fact that the employee had disobeyed the employer's orders was held not to defeat recovery under the Workmen's Compensation Act where the injured employee was otherwise acting within the scope of the employment and for the purpose of benefiting or furthering the interests of the employer. On that proposition, those cases and *Milwaukee v. Industrial Comm.* 160 Wis. 238, 151 N. W. 247; *Sheboygan Airways, Inc., v. Industrial Comm.* 209 Wis. 352, 245 N. W. 178, 181; and *Severson v. Industrial Comm.* 221 Wis. 169, 266 N. W. 235, 237, 238 (see also *Ex parte Terry,* 211 Ala. 418, 419, 100 So. 678), are in point in support of the commission's award herein. On the other hand, those precedents are not in conflict with the decision in *Olson Rug Co. v. Industrial Comm. supra,* because it did not appear in that case that the injured employee, who sought compensation, had any duty to perform for his employer in respect to the automobile trip which he was making at the time of his injury, or that he was making that trip for the benefit or in furtherance of the interests of his employer.

Likewise, the fact that Drew, in connection with making the trip primarily for the purpose of attending the meeting, also intended to attend the birthday party after the meeting, did not necessitate holding that he was not performing service growing out of and incidental to his employment at the time he was injured. *Barragar v. Industrial Comm.* 205 Wis. 550, 555, 238 N. W. 368; *Schmiedeke v. Four Wheel*

*Drive Auto Co.* 192 Wis. 574, 213 N. W. 292; *Racine County v. Industrial Comm.* 210 Wis. 315, 318, 246 N. W. 303; *Matter of Marks v. Gray,* 251 N. Y. 90, 167 N. E. 181. As the commission rightly said: "The fact that Drew might incidentally have intended to attend a birthday party we believe is not material. The real purpose of his trip was to attend the meeting which was being held by the grocers in South Milwaukee and the fact that he delayed his departure for Milwaukee by a short visit at the restaurant in no way increased the hazard, this in view of the fact that he used the same route returning to Milwaukee as he would have used had he gone directly from the meeting to his home."

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, in September 15, 1936.