PETERMAN, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents.

*May 19—June 21, 1938.*

354

For the appellant there was a brief by *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *R. T. Reinholdt.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*Carlyle B. Wurster* of Merrill, for the respondent Employers Mutual Liability Insurance Company.

NELSON, J. The plaintiff now concedes that such of the findings as relate to the facts are supported by the evidence, and that under the statute, sec. 102.23, and the established law, they may not be disturbed on appeal. The plaintiff, however, contends that the following findings:

(d) "That applicant, in taking hold of the shaft, was not performing service growing out of and incidental to his employment;"

(e) "That his action in taking hold of the shaft was out of idle curiosity and through no desire to perform service for respondent;"

(f) "That applicant's injury did not arise out of his employment,"

are conclusions of law which may be reviewed on appeal for the purpose of determining whether they are supported by the evidence. It may be argued that the findings "that applicant [at the time of his injury] was not performing service growing out of and incidental to his employment" and "that applicant's injury did not arise out of his employment" are conclusions of law. *Duluth-Superior Milling Co. v. Industrial Comm.* 226 Wis. 187, 275 N. W. 515, 276 N. W. 300; *Continental Baking Co. v. Industrial Comm.* 222 Wis. 432, 267 N. W. 540; *International Harvester Co. v. Industrial Comm.* 220 Wis. 376, 265 N. W. 193; *Western W. & I. Bureau v. Industrial Comm.* 212 Wis. 641, 250 N. W. 834; *Olson Rug Co. v. Industrial Comm.* 215 Wis. 344, 254 N. W. 519; *Gomber v. Industrial Comm.* 219 Wis. 91, 261 N. W. 409; *Sheboygan Airways, Inc., v. Industrial Comm.* 209 Wis. 352, 245 N. W. 178.

However, under many of our other decisions such findings have been considered as findings of fact. In *Indrebo v. Industrial Comm.* 209 Wis. 272, 274, 243 N. W. 464, it was said:

". . . A finding that the injury did not occur at a time when the employee was 'performing service growing out of and incidental to his employment' is a finding of fact within these rules."

In *Barragar v. Industrial Comm.* 205 Wis. 550, 555, 238 N. W. 368, in considering whether the accident there occurred in the course of employment, it was said:

". . . The ascertainment of the facts necessary to apply this test involves the determination of a question of fact, and if there is evidence to sustain the commission its findings cannot be disturbed."

Similar holdings occurred in the following cases: *Morgan Co. v. Industrial Comm.* 185 Wis. 428, 201 N. W. 738; *Presque Isle v. Industrial Comm.* 200 Wis. 446, 448, 228 N. W. 589; *Kraft v. Industrial Comm.* 201 Wis. 339, 230

N. W. 36; *Sheboygan Airways, Inc., v. Industrial Comm. supra; Racine County v. Industrial Comm.* 210 Wis. 315, 317, 246 N. W. 303; *Peterson v. Industrial Comm.* 215 Wis. 96, 254 N. W. 342; *Githens v. Industrial Comm.* 220 Wis. 658, 665, 265 N. W. 662; *Severson v. Industrial Comm.* 221 Wis. 169, 266 N. W. 235.

Whether the particular findings assailed are findings of fact or conclusions of law, is in our opinion, under the facts of this case, of little importance.

At the time the plaintiff was injured, the applicable law provided in part as follows:

Sec. 102.03 (1), Stats. 1933: "Liability under this chapter shall exist against an employer only where the following conditions concur: . . .

"(c) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment. . . .

"(d) Where the injury is not intentionally self-inflicted.

"(e) Where the accident or disease causing injury arises out of his employment."

The controlling question for determination is whether the evidence sustains the finding or warrants the conclusion that at the time the plaintiff was injured he was not performing service growing out of and incidental to his employment and that his injury did not arise out of his employment.

Evidence was adduced before the examiner tending to show that on January 18, 1935, when the plaintiff was injured, he was employed by the defendant, Doering (who was engaged in the business of logging for the Brokaw Paper Mills), to haul logs from the woods with his truck, and that he had been instructed by Doering's foreman to do such other work as was necessary to keep the job moving. Logs were loaded on to the trucks by means of a "jammer," which was operated by a gasoline motor from which an unguarded shaft extended horizontally. This shaft contained a notch or key

running longitudinally along it. The shaft was about seventeen or eighteen inches above the ground. Shortly before the plaintiff was injured, the men employed in the truck-loading operations were waiting for more logs to be brought up. It was a cold morning, eighteen or twenty degrees below zero. The oil pump on the gasoline motor had become frozen, and the plaintiff was asked to help thaw it out. He complied with that request, and assisted a fellow employee, Hicks Doering, in thawing it out. This was done by dipping sticks in the gasoline tank, lighting them, and holding them close to the pump. The pump was thawed out and the motor started. While the motor was running, and the shaft revolving, a discussion arose, participated in by the plaintiff and Hicks Doering, as to whether the motor could be stopped by taking hold of the shaft. Hicks told the plaintiff to try it, which the plaintiff did, with the result that he was whirled over the shaft and on to the ground and sustained severe injuries to his arm and hand. The motor stopped.

The examiner found that the plaintiff's action in taking hold of the shaft was out of idle curiosity and through no desire to perform service for respondent. This finding in our opinion clearly is a finding of fact, and since there is evidence to sustain it, it cannot be disturbed. The evidence tends clearly to show that the plaintiff took hold of the revolving shaft for the purposes of matching his strength against that of the motor and experimentally determining whether he could stop it. In our opinion, the evidence adduced amply supports the finding that the plaintiff took hold of the shaft out of idle curiosity, and that in so doing he was not performing service for his employer.

While we have not heretofore had to consider an action involving a similar state of facts, we are of the opinion that when the plaintiff as a result of idle curiosity matched his strength against that of the gasoline motor, he was not per-

forming service growing out of and incidental to his employ-
ment, and that his resulting injuries did not arise out of his
employment. An employee may momentarily step aside from
his employment, and such a step may effectually break the
master and servant relationship. An employee may wilfully
do a wrongful act for purposes entirely foreign to his em-
ployment, and while so acting take himself without the scope
of his employment. *Firemen's Fund Ins. Co. v. Schreiber,*
150 Wis. 42, 135 N. W. 507; *Sheboygan Airways, Inc., v.
Industrial Comm., supra.* Such a departure from the scope
of one's employment, measured in terms of time and space,
may be very slight. Nevertheless, if the act performed by
one is in furtherance of his own purposes and without the
scope of his employment, the master may not be liable.
*Eckel v. Richter,* 191 Wis. 409, 211 N. W. 158.

In *Pruno v. Industrial Comm.* 187 Wis. 358, 362, 203
N. W. 330, 204 N. W. 576, in speaking of a situation
where a person asserted to be an employee of Pruno, went
down into a deep well to ascertain the effect or result of a
blast conducted with dynamite, it was said:

"Assisting Westine to go into the well after dinner was a
neighborly act, performed to satisfy a very natural curiosity
on the part of all concerned, Westine included. It in no way
concerned Pruno as an employer."

In several cases decided by the courts of other states some-
what analogous situations have been dealt with. In *Saucier's
Case,* 122 Me. 325, 329, 119 Atl. 860, a fifteen-year-old
girl went twenty-one feet out of her way during her lunch
hour to put her hand up to an exhaust fan to determine
whether any air was coming from it into the room. Her
hand was caught in the fan and she was injured. The com-
mission awarded compensation which was approved by the
sitting justice. The court, however, reversed the decree, say-
ing, among other things:

"The petitioner had no more occasion to go to that fan
and test it than she would have had to go to the place of a

circular saw, or any other dangerous machine that might be properly installed for the conduct of business, for the purpose of testing whether such saw and machine were in motion.

"She went out of the way over which her business took her twenty-one feet to enable her to reach the fan. Instead of being engaged in the pursuit of her business, which was going from the workroom to the dressing room, she left her business, not passively, but voluntarily and intentionally, to interfere with a fixture with which she, nor any other employee of the factory, had any business whatever. It is evident that the accident had no connection with her employment."

In *Maronofsky's Case*, 234 Mass. 343, 345, 125 N. E. 565, a workman left his place of employment to answer a telephone call, and in returning stopped to talk to a fellow employee who was standing at a tank. While leaning on the galvanized iron table, the workman reached for an electric lamp to enable him to look into the tank. While so acting he received an electric shock which caused his death. The board found that he "did not receive an injury which arose out of and in the course of his employment," and dismissed the claim of the dependents. The court sustained the order saying:

". . . The finding that the fatal injuries received by the employee did not arise out of and in the course of his employment must stand as there was evidence to support it. If, as the board found, the deceased while on his way back to the room where he was employed stopped at the tank to talk with a fellow workman on matters not connected with his employment, and while so engaged leaned on a galvanized iron table and took hold of an electric lamp to enable him to look into the tank, merely for the purpose of satisfying his curiosity, it is plain it properly could not be found that the accident arose out of or in the course of his employment. [Cases cited.]"

In *Culhane v. Economical Garage Co.* 188 App. Div. 1, 3, 176 N. Y. Supp. 508, a workman was employed to wash

cars. A revolver had been removed from an automobile to the garage office for safekeeping. As the decedent was returning to the garage after supper, the foreman thereof invited him to come into the office to see the revolver, and while the foreman was handing it to the decedent it discharged and killed him. The court, upon appeal, held that an award of the commission was not supported by the evidence, since the decedent was not engaged in the discharge of his duties, the court saying:

"The two men were gratifying their curiosity in respect to the revolver and were doing nothing to further the interest of their employer."

In *Cennell v. Oscar Daniels Co.* 203 Mich. 73, 168 N. W. 1009, 7 A. L. R. 1301, it was held, under the facts of that case, that the accident did not arise out of their employment because such employment did not require them to leave the scene of their contemplated operations to gratify their idle curiosity.

In *Haas v. Kansas City Light & Power Co.* 109 Kan. 197, 198 Pac. 174, a similar holding may be found. These cases support the rule that an employee may not recover for an injury suffered while engaged in satisfying his idle curiosity. An employee may engage in conducting an experiment or test for the benefit of his employer and in pursuance of his work. In such a case the fact that he himself was personally curious would be without materiality. We ground our decision in this case on the proposition that the plaintiff, at the time he was injured, was not only doing an act to satisfy his idle curiosity which had no connection with any service he was performing, but was engaged in matching his strength against that of the gasoline motor, and that such acts amounted clearly to a departure from his employment. To hold otherwise would permit recoveries by employees in all

sorts of similar situations, such as attempting to stop a machine or mechanical device by taking hold of a shaft or flywheel, or attempting to hold back an automobile or truck for the purpose of determining which was the stronger, the employee or the machine. Similar examples might be multiplied.

The plaintiff further contends that at the time he was injured he was merely waiting on the premises of his employer until the work of loading the logs could be resumed. Had the plaintiff been waiting for the work to be resumed and had been injured while so waiting, he no doubt would have been entitled to compensation under the doctrine that such waiting was a necessary incident of his employment, but it is clear that the plaintiff was not so waiting. He did not negligently or inadvertently come in contact with the shaft. He departed from his employment to satisfy his idle curiosity as to whether he or the motor was the stronger. In *Badger F. Co. v. Industrial Comm.* 195 Wis. 134, 136, 217 N. W. 734, it was said:

"The compensation act covers not only the particular work that the employee is engaged to perform, but it covers the employee while he is engaged in the necessary incidents thereto."

Numerous cases are there cited to illustrate what are necessary incidents to the work an employee is performing.

The plaintiff further contends that, although he intentionally took hold of the shaft, he did not intend to inflict any injury upon himself, and in doing what he did he was merely negligent and that negligence does not defeat compensation rights. In view of what we have already said, we consider the contention without merit.

The plaintiff earnestly contends that the facts in this case bring it within the doctrine of *Robinson v. State,* 93 Conn.

49, 104 Atl. 491, in which it was held that a highway-repair foreman who was crossing from the north side of a road to the south side thereof, for the purpose of having a conversation with a friend who happened to come along, and who, while so crossing, was struck by a passing automobile, did not step outside of his employment as a matter of law, since there was no evidence as to how long he intended to talk, and no evidence that his starting to cross the road interfered with the due performance of his work as foreman. We think that case quite different from the present one. There was nothing in the *Robinson Case* to require a holding as a matter of law that he had stepped outside of his employment.

Other contentions are made by the plaintiff which need not be considered in view of our holding that compensation may not be recovered where the facts are substantially similar to those found by the commission. It is our conclusion that the commission was well warranted in finding or concluding that at the time of the injury the plaintiff was not performing service growing out of and incidental to his employment; that his injury did not arise out of his employment and that, therefore, the circuit court committed no error in confirming the order of the commission.

*By the Court.*—Judgment affirmed.